Nelson, J.,
delivered the opinion of the Court.
By the chancellor’s decree, pronounced at August Term, 1869, it was declared that the deed in the pleadings mentioned, executed 5th August, 1865, by McCollum to Roach, although absolute on the face, was merely a mortgage to indemnify Roach as security for McCollum, and an account was ordered to ascertain - said liability, as well as the amount due complainant. The Master made a report in obedience to this order, which was con *514 firmed by a decree at tbe February Term, 1810, and in said decree be was directed to sell tbe land described in tbe record at public sale on a credit of six and twelve months. He sold tbe land, accordingly, on tbe 6tb day of June, 1870, and "William B. Leacb became tbe purchaser, at $4,510, and executed bis notes with security for tbe purchase money, and tbe Master filed bis report of sale on tbe same day. Roach died 29th April, 1870, after tbe decree was pronounced directing a sale of tbe land, and before tbe day upon which tbe sale was made. He was tbe father of nine children, who are bis heirs at law — three of whom were minors at tbe time of tbe sale. It' is stated in tbe Master’s second report that Roach máde a nuncupative will; that one of bis executors was present at tbe sale; that tbe fact of bis death was notorious and well known to Leacb at tbe time of bis purchase. At tbe August Term, 1870, tbe death of Roach was suggested ■ and proved, and a scire facias was awarded against his heirs, for tbe purpose of reviving tbe suit against them. Tbe scire facias was duly made known 1st February, 1871, to all the heirs, except B. M. Roach, J. W. Harmon and wife, as appears from tbe sheriff’s return thereon. A guardian ad litem was duly appointed for tbe minors, and filed bis answer in their behalf 28th February, 1871, and at tbe February Term, tbe adult heirs, including B. M. Roach, J. M. Harmon and bis wife Sarah E., entered their appearance in the cause, and consented, together with tbe *515 executors, and it was revived accordingly against them, and upon the scire facias against the minors.
Meanwhile, and on the 27th February, 1871, Leach filed his petition in the cause, in which he prayed to be relieved from his purchase, insisting in his petition: first, that the land had descended to the heirs of Loach, and that the legal title was in them at the time of the sale; second, that as the sale was not confirmed at the August Term, 1870, he would lose the rents for that year, estimated at five hundred dollars; and third, that he had not been put in possession, and that, since the sale, trespasses and waste had been committed on the land by McCollum and others to such an extent as materially to impair its value.
During the same term of the court, the Chancellor referred it to the Master to hear proof and make an instanter report touching the matters alleged in the petition. Proof was heard, and a report made at the same term, in which some of the facts above stated are recited, with the additional statements that Leach had never been in possession of the land; that one 'White was in possession, but by what authority was not ascertained; that the rents of the land were worth five hundred dollars per annum. This report was made 10th March, 1871, and does not appear to have been excepted to, but exceptions were filed by Leach 1st March, 1871, to the Master’s report of sale filed in June, 1870, in which a confirmation of the sale was resisted on the ground of Loach’s death *516 and the failure to revive against his heirs before the day of sale. These exceptions were disallowed, the petition dismissed, and the report of sale confirmed by the Chancellor on or about the 13th March, 1871, (as may be inferred from the appeal bond, the record not showing the date of the decree,) and from said decree, Leach, the purchaser, prosecutes this appeal.
It is • now insisted that the exceptions of Leach were not filed within the time prescribed by Buie 30, Code, p. 984, and also by see. 4046, and that the motion to take the -exceptions from the file should have prevailed. No such motion appears in the record. It is very clear that “the exceptions were not filed on or before the second day of the term to which the report was made,” and could have been taken off the file, on motion, if no good cause had been shown for the relaxation of the rule. But it is too late to make the objection in this court when it was not made, as it should have been, in the court below. The question, however, is of little practical consequence, as we hold that, upon the facts of this case, it cannot be properly raised by exceptions to the Master’s report. There was nothing in the record, at or before the time of filing the report of sale, upon which the exceptions could rest, but the matter of them was properly brought before the Court by petition.
~We are not aware that the most important point made in the petition has ever been finally *517 adjudicated in this State. It has been frequently determined that a sale by the Master is not complete until there is a decree of confirmation, and that the title to real property purchased at such ■sale does not pass until there is a final decree divesting and vesting title, or ordering the Clerk to execute a deed. A lien is usually retained on the land sold for the payment of the purchase money, and it is not usual to divest the title until after payment, though this may be done before, by a decree retaining the lien. In proper cases, the court may set aside the sale before or after confirmation for fraud, accident, mistake, or want of title. But whether the purchaser can be required to take the title, where the sale was ordered before the death of the owner, and made afterwards, has not been determined. In' regard to sales made by execution or attachment at law, it was held, in Preston v. Surgoine, Peck 80, 81, that real estate is bound by the judgment, and does not descend to the heir, but is in custodia legis, if the judgment be rendered before the death of the defendant, and that if it is sold within a year and a day under an execution issued upon such judgment, the sale would be valid without a scire facias against the heir. In 1 Meigs’ Dig., 518, it is said that this is not law, and the case of Rutherford v. Read, 6 Hum., 423, is referred to, as sustaining the contrary doctrine. But that case makes no reference to the case in Peck. In that case, which originated before a justice, land was levied on, and the pro *518 ceedings returned to the July Term of the County Court, when an order of condemnation was made, and a venditioni exponas was awarded, returnable to the October Term. No sale was made. In the meantime, the judgment debtor died in August, and an alias order of sale, tested of the October Term, was issued, and the land sold under it, and this sale was held void on the ground that the legal title had descended to the heirs. In Green v. Shaver, an attachment had been levied on land, and the debtor died afterwards and before judgment. It was held that no judgment could be rendered condemning the land until the heirs were before the Court: 3 Hum., 141. In a previous case it' was strongly intimated that if an execution is issued after, but tested before the death of the testator, it bears relation to the teste, and it was said that “the process speaks át a time when the party was in life.” But it was said, further, that if the debtor dies after the levy, and before the order of sale, the Court could not proceed to make the order and award the process, without having new parties: Overton v. Perkins, 10 Yer., 333. See also Bank v. Chester, 11 Hum., 580.
These and similar cases at law do not, in our opinion, affect the case presented in this record. A distinction may well exist between the effect of mere levy made under an execution or attachment, which is of no force or validity until it is perfected by a sale, and where the heir may show, if he can, that the personal property had not been exhausted, *519 and a case in equity where the land itself is- in litigation,' and is in the custody of the court, and a decree has been pronounced in the lifetime of the owner directing its sale. In such a case the title of the purchaser would, probably, not only relate to the day of the sale, but to the date of the decree directing it. It would not give the purchaser a valid claim to intermediate rents, for the reason that his purchase is not complete until confirmation and a divestiture of title; but the decree ordering the sale, and the sale itself, are links in his chain of title. And, in the case at bar, it appears that McCollum made an absolute deed to Roach, which, in the lifetime of Roach, was declared to be a mortgage, and the land directed to be sold under the decree of the court, for the satisfaction, in the first place, of the debt due Roach, and then for the satisfaction of the debts due complainant. Although the title of Roach was not divested in terms .by the decree, yet such was its legal effect, and it did not and could not clescend to the heirs, but was held in abeyance to be transmitted to the purchaser at the sale ordered by the decree. If it were not so held, the effect of the decree was, in the view of a court of equity, to declare that the land was held as a mere security for the debt, and that the title was in McCollum, the maker of the deed. It is declared in.a work of high authority, that “whatever may have been the old doctrine respecting the rights and interests of the mortgagor, it is now settled that a mortgagor, even after forfeiture, is considered *520 in equity as still baying tbe ownership of tbe estate, tbe land being only a pledge or security for tbe mortgage money.” 2 Crabb’s Real Prop., 53, Law Lib., 567, sec. 2212. And even where a deed of trust is executed, and tbe title formally vested in tbe trustee as a third party, tbe court, under the provisions of tbe Code, may, upon bis resignation, removal, or refusal to act, apjeoint a successor in bis place; and, upon bis death, a new' trustee may always be appointed on application of tbe beneficiaries, by petition making all necessary parties defendants: Code, 3661, 3663.
But if tbe interlocutory decree did not have tbe effect to divest tbe dry legal title out of Roach we bold that, as bis heirs were made parties before tbe decree of confirmation, it was proper for tbe chancellor to pronounce that decree, and not to release tbe purchaser. Neither McCollum nor tbe heirs of Roach made any objection to it, and all proper parties were rightfully before tbe court when tbe decree was pronounced. It is well established that if a vendee files a bill against tbe vendor for tbe rescisión of a contract for tbe sale of land, tbe purchaser cannot be discharged from bis purchase merely upon tbe ground that bis vendor cannot make a good title, and tbe vendor, if be has acted fairly, will be allowed a reasonable time within which to make tbe title: 1 Meigs’ D., 213, 214; Blackmore v. Shelby, 8 Hum., 441. By a parity of reasoning, if the sale directed by tbe court occurred under such circumstances as *521 that a good title could not be made, yet if the heirs and personal representatives, as in this case, were brought before the court within a reasonable time, the purchaser should be compelled to take the title It may fairly be inferred that all parties in interest .but the purchaser, were willing to the confirmation, and that it is to the interest of such of them as are minors that the decree shall stand: See Swan v. Newman, 3 Head, 290, 291; Kirkman, ex parte, Ib. 519.
Leach, the purchaser, was not entitled to the rents and profits of the land for the year 1870, and had no good cause to complain in his petition of the delay in confirming the sale — some eight or nine months only elapsed between the day of sale and the decree of confirmation. No application was made for relief at the first term after the sale, and it was not until after the service of the scire facias, and the parties were all about to be brought before the court, that ■ any complaint was made by the purchaser. The application would seem to have been made more for delay than the obtaiument of justice.
Affirm the decree with costs, and remand the cause for further proceedings.