# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF TENNESSEE

## DECEMBER TERM, 1921.

---

FANNIE M. JORDAN *et al. v.* ALBERT FITE JORDAN.[*]

### (*Nashville.* December Term, 1921.)

1. COURTS. Power of chancellor cannot be enlarged by consent.
A court cannot validly adjudicate a matter which does not fall within its jurisdiction, and the consent of the parties or waiver of the court's action cannot confer power upon the court in cases where it is not conferred by law. (*Post, p.* 403.)

Acts cited and construed: Acts 1903, ch. 248; Acts 1905, ch. 427.

Case cited and approved: Chickamauga Trust Co. v. Lonas, 139 Tenn., 228.

Code cited and construed: Secs. 6228a1, 6228a5, (S.).

2. JUDICIAL SALES. Chancellor cannot confirm in chambers except on conditions stated in act of 1903.

Acts 1905, chapter 427, amending Acts 1903, chapter 248, by adding to the powers of the chancellor at chambers the power to hear and determine by final decree causes when the parties consent to such hearing and any action desired (except to confirm sales where ten days notice is required), did not change the clear pro-

---

[*]On right to partition between life tenant and remainderman, see note in L. R. A. 1918D, 454.

vision of the act of 1903, permitting confirmation of sales in chambers only on conditions therein stated. (*Post, pp.* 403-406.)

3. **PARTITION.** Invalidity of decree of confirmation does not invalidate sale.

The invalidity of a decree confirming a sale for partition because it was made in chambers without compliance with the conditions prescribed by Acts 1903, chapter 248, as amended by Acts 1905, chapter 427, does not invalidate the sale, but the sale, if otherwise regular and valid, could be confirmed by decree at the regular term of court. (*Post, pp.* 406-408.)

4. **DEEDS.** Remainder to class is contingent.

A deed to a woman for life and at her death to her children, as it conveys the remainder to the children who may be living at her death, is a conveyance to a class, and therefore contingent, and not vested. (*Post, pp.* 408-412.)

Cases cited and distinguished: Sanders v. Byrom, 112 Tenn., 474; Tate v. Tate, 126 Tenn., 173; Satterfield v. Mayes, 30 Tenn., 58; Forrest v. Porch, 100 Tenn., 391; Bigley v. Watson, 98 Tenn., 353.

5. **EVIDENCE.** Possibility of issue exists in law during life.

In contemplation of law there is a possibility of issue so long as life lasts. (*Post, pp.* 413, 414.)

Case cited and approved: List v. Rodney, 83 Pa., 483.

6. **DEEDS.** Elements of conveyance to class stated.

The three elements essential to the application of the rule governing conveyances to a class are a class subject to increase or diminution, a conveyance to the class, and a time of distribution fixed at a subsequent period. (*Post, pp.* 414-416.)

7. **PARTIES.** Doctrine of virtual representation requires party with actual interest similar to that of unknown party.

The equitable doctrine of virtual representation cannot be invoked merely for the benefit of unknown or unborn persons, but there must be a person with an actual interest similar to that of an unknown party in order to bind the party not before the court in person. (*Post, pp.* 414-416.)

Jordan v. Jordan.

8. **PARTIES.** Chancellor held to have jurisdiction over unborn children under doctrine of virtual representation.

In a suit to partition land, where the remainder had been given to the children of the life tenant as a class, the living remaindermen at the time of the sale represented the interest of any possible unborn children so as to give the court jurisdiction to bind all parties by decree as to the title under the equitable doctrine of virtual representation. (*Post, pp.* 416-430.)

Acts cited and construed: Acts 1827, ch. 54; Acts 1835, ch. 20; Acts 1829, ch. 35.

Cases cited and approved: Denegre v. Walker, 2 Ann. Cas., 787; Rutledge v. Fishburne, 97 Am. St. Rep., 757; Reynoldson v. Perkins Ambl. (Eng.), 564; Miller v. Texas, etc., R. Co., 132 U. S., 662; McCampbell v. Mason, 151 Ill., 500; Temple v. Scott, 143 Ill., 290; Hermann v. Parsons, 117 Ky., 239; Mathews v. Lightner, 85 Minn., 333; Collins v. Crawford, 214 Mo., 183; Woolsey v. Woolsey, 78 N. J. Eq., 579; Faulkner v. Davis, 18 Grat., 690; Cannon v. Barry, 59 Miss., 305; Bowen v. Gent, 54 Md., 571; Card v. Finch, 142 N. C., 149; Williamson v. Jones, 43 W. Va., 562; Walker v. Des Portes, 92, S. C., 515; Mosely v. Hankinson. 22 S. C., 323; Faber v. Faber, 76 S. C., 156; Ridley v. Halliday, 106 Tenn., 607; Leonard v. Lord Sussex, 2 Vernon, 527; Gaskell v. Gaskell, 6 Simon, 643; Gifford v. Hart, 1 Sch. & Lef.—; Gavin v. Curtin, 171 Ill., 640; Ruggles v. Tyson, 104 Wis., 500; Sweet v. Parker, 22 N. J. Eq., 454; Baylor v. Dejarnette, 13 Grat., 152; McArthur v. Scott, 113 U. S., 391; Hurt v. Long, 90 Tenn., 445; Lancaster v. Lancaster, 81 Tenn., 132; Thompson v. Mebane, 51 Tenn., 370; Norment v. Wilson, 24 Tenn., 311; Helm v. Franklin, 24 Tenn., 405; Brown's Case, 27 Tenn., 207.

Cases cited and distinguished: Finch v. Finch, 2 Vesey, Sr., 492; Kent v. Church, 136 N. Y., 10.

9. **EQUITY.** Adjudication outside of pleadings is void.

Nothing is properly before the court of chancery for its determination except what is submitted to it in the pleadings, and an adjudication outside of the scope of pleadings is void. (*Post, p.* 430.)

Cases cited and approved: Wilson v. Schaefer, 107 Tenn., 300; E. Tenn. Coal Co. v. Daniel, 100 Tenn., 65.

10. **EQUITY.** Can grant relief to which answer shows complainant is entitled.

A chancellor may give to a complainant relief to which the answer shows complainant was entitled, though the bill did not contain facts essential to granting the relief or ask for such relief. (*Post, pp.* 430, 431.)

Cases cited and approved: Tenn. Ice Co. v. Raine, 107 Tenn., 151; Dollman v. Collier, 92 Tenn., 660; Cox v. Waggoner, 37 Tenn., 543; Rose v. Nynatt, 15 Tenn., 31; Neal v. Robinson, 27 Tenn., 435; Mulloy v. Young, 29 Tenn., 298; Bartee v. Tompkins, 36 Tenn., 623.

Case cited and distinguished: Bang v. Windmill Co., 96 Tenn., 361.

11. **PARTITION.** Petition and answer held to authorize decree vesting purchasers with perfect title.

Where a petition by purchasers at a sale for partition alleged the sale was invalid for numerous reasons, and sought to have it set aside, and the answer alleged that the sale was for the best interest of all the owners of the land, and that they desired to have it confirmed and full title vested in the purchaser, a decree of the chancellor denying the right of the purchasers to have the sale set aside, but confirming the title in them as against all the former owners, was authorized by the pleadings. (*Post, pp.* 431, 432.)

12. **PARTITION.** Purchasers of contingent interest held not entitled to relief for want of warranty of title.

Where the sale for partition was made on the theory that the interests of the remainderman were vested, whereas in fact they were contingent, the purchasers are not entitled to be relieved from their purchase on their contention that they were thereby deprived of the implied warranty of title, given by Shannon's Code, section 5917, where a sale for partition was made at the voluntary instance of the parties. (*Post, pp.* 432, 433.)

Code cited and construed: Sec. 5917 (S.).

13. **VENDOR AND PURCHASER.** Executory contract can be rescinded for defects in title though executed contract cannot.

Jordan v. Jordan.

Though in the case of an executed contract for the purchase of land the purchaser must rely upon the covenants of the deed for protection against defects in title, and cannot, before eviction, come into equity for rescission of his contract except for fraud, a purchaser under an executory contract is not required to complete his purchase and accept his conveyance unless title can be made according to the vendor's contract. (*Post, pp.* 433-445.)

14. **PARTITION.** Purchaser cannot rescind before confirmation for defects in title which can be corrected.

The fact that a purchase at a judicial sale for partition is executory until confirmed by the court does not entitle the purchaser to rescind before confirmation because of defects in the title where those defects can be cured and perfect title vested in the purchaser without unreasonable delay. (*Post, pp.* 433-445.)

Cases cited and approved: Elliott v. Blair, 45 Tenn., 185; Frazier v. Pankey, 31 Tenn., 75; Woods v. North & Johnson, 25 Tenn., 309; Blakemore v. Shelby, 27 Tenn., 430; Frost v. Brunran, 14 Tenn., 36; Ex parte Kirkman et al., 40 Tenn., 518; Swann v. Newman, 40 Tenn., 290; Topp. v. White, 59 Tenn., 165; Kennedy v. Woodfolk, 4 Tenn., 195; Buchanan v. Alwell, 27 Tenn., 516; Humbard v. Humbard, 40 Tenn., 101; Maney v. Porter, 22 Tenn., 363; Gwinther v. Gerding, 40 Tenn., 197; Trigg v. Read, 24 Tenn., 529.

Cases cited and distinguished: Ex parte Kirkman, 40 Tenn., 513; Swan v. Newman, 40 Tenn., 289; Davidson v. Bowden, 37 Tenn., 129; Bryant v. McCollum, 51 Tenn., 511; Nichol v. Nichol, 63 Tenn., 145; Baker v. Shy, 56 Tenn., 85; Blackmore v. Shelby, 27 Tenn., 440.

15. **PARTITION.** Purchaser can rescind for fraud.

Where a decree for sale of property for partition is void for fraud, the contract to purchase cannot be enforced against the purchaser even though the court can decree a good title. (*Post, p.* 445.)

16. **PARTITION.** Allegation remainders were vested held not fraudulent misrepresentation.

---

Jordan v. Jordan.

---

In a bill for partition by sale, allegations that the remainders conveyed by deed referred to in the bill were vested, due to a misconstruction of counsel as to the effect of the deed, were not fraudulent misrepresentations entitling the purchaser to rescind the sale after he discovered the remainders were contingent, where the court could decree a good title to him.  (*Post, pp.* 445, 446.)

17. JUDGMENT.  Courts cannot determine question within subject-matter of jurisdiction unless authorized by law.

Even though a court may have jurisdiction of the general subject-matter of a bill, it cannot make a valid adjudication with reference thereto which is not within the powers granted to it by law. (*Post, pp.* 446, 447.)

18. PARTITION.  Chancery cannot decree partition between life tenant and remaindermen.

Though chancery has general jurisdiction over the subject-matter of partition, it has no power to decree a partition between a life tenant and a remainderman, and a decree attempting such partition is a nullity.  (*Post, pp.* 447-450.)

Case cited and approved:  McConnell v. Bell, 121 Tenn., 198.

Cases cited and distinguished:  Chickamauga Trust Co. v. Lonas, 139 Tenn., 228;  Holt v. Hamlin, 120 Tenn., 496.

19. PARTITION.  Cotenants in remainder may have partition with consent of life tenant.

Cotenants in remainder have a right to partition by sale of the land and distribution of the proceeds when it is to the advantage of all parties that that be done, and the life tenant consents to such a sale.  (*Post, pp.* 450, 451.)

20. LIFE ESTATES.  Life tenant may consent to partition by joining in bill of remaindermen.

A life tenant may manifest her consent to sale for partition by joining in a bill filed by some of the remaindermen against the others praying for such relief.  (*Post, pp.* 450, 451.)

21. PARTITION.  Cannot be maintained by contingent remaindermen.
There can be no partition or sale for partition among contingent

Jordan v. Jordan.

remaindermen, so that purchasers at a sale based upon a bill alleging the remainders were vested can rescind the purchase upon discovering that the remainders were contingent. (*Post, pp.* 451-453.)

Case cited and approved: Land Co. v. Hill et al., 87 Tenn., 589.

Case cited and distinguished: Rutherford v. Rutherford, 116 Tenn., 383.

22. JUDGMENT. Petition before confirmation of partition sale to have title perfected or to rescind is a "direct attack."

A petition by purchasers at a sale for partition alleging that the remainders which were alleged in the bill to be vested were contingent, and asking to have the sale set aside, or to have title perfected in the purchasers, is, when filed before the confirmation of the sale, a direct attack, which is defined as an attempt to amend, correct, reform, vacate, or enjoin the execution of a judgment in a proceeding instituted for that purpose. (*Post, pp.* 453-456.)

23. JUDGMENT. Equity can set aside void judgment regular on its face.

Equity has power to set aside and enjoin the enforcement of a judgment which is absolutely and entirely void, and especially where the judgment is regular on its face and does not disclose the grounds of its invalidity. (*Post, p.* 456.)

24. JUDGMENTS. Bill attacking judgment for want of jurisdiction a direct attack.

A bill in equity to set aside and enjoin the enforcement of a judgment which is void for want of jurisdiction is a direct attack, and the facts necessary to determine the question of jurisdiction may be inquired into at the hearing on such bill. (*Post, p.* 456.)

Case cited and approved: Nashville v. Fisher, 1 Shan. Cas., 345.

25. PARTITION. Remedy of purchaser under void decree before confirmation is by petition in same cause.

The remedy of a purchaser at a sale for partition under a decree which was void, is before confirmation of the sale, by a petition in the cause in the court where the sale was ordered. (*Post, pp.* 456, 457.)

Jordan v. Jordan.

Cases cited and approved: Read v. Fite, 27 Tenn., 330; Blackmore
v. Barker, 32 Tenn., 342; Spence v. Armour, 56 Tenn., 167; Majors
v. McNeilly, 54 Tenn., 294; Bryant v. McCollum, 51 Tenn., 513;
Greenlaw v. Greenlaw, 84 Tenn., 435.

26. Judgment. Deed showing want of jurisdiction held part of bill,
and, if it shows want of jurisdiction, decree is subject to direct or
collateral attack.

Where a bill for partition by sale alleged that the parties claimed
under a deed recorded in the register's office, a certified copy of
which would be filed on or before the hearing, if necessary, the
deed was a part of the bill, and, if it shows lack of jurisdiction,
the decree for sale can be set aside either by direct or collateral
attack.  (*Post, pp.* 457, 458.)

McKinney, J., dissenting.


FROM SMITH.


Appeal from the Chancery Court of Smith County to
the Court of Civil Appeals, and by *certiorari* to the Court
of Civil Appeals from the Supreme Court.—Hon. W. R.
Officer, Chancellor.

H. B. McGinness and L. A. Ligon, for plaintiffs.

J. N. Fisher, J. R. Curtis, W. V. Lee and Roberts &
Cooper, for defendant.

Mr. L. D. Smith, Special Judge, delivered the opinion
of the Court.

This is a case in which the purchasers of land at a chan-
cery court sale made for partition are seeking to have the

145 Tenn.—25.

sale set aside after confirmation upon the ground that the decree ordering the sale and decree of confirmation were void, and that the decree of sale was obtained by misrepresentation and fraud, was void for other reasons, and that they did not obtain a good title to the property purchased. A full history of the pleadings and proceedings will be necessary to an intelligent consideration of the many questions presented.

The original bill in this cause was filed on August 18, 1920, by Fannie M. Jordan and husband, W. W. Jordan, and three of their children who were adults at the time, against another one of their children who was a minor. The bill alleged that Fannie M. Jordan and her children, who were named in the bill, were the owners of a certain tract of land situated in the Fourth civil district of Smith county, which had been conveyed to them by J. H. Young, deceased, the father of Fannie M. Jordan, by deed recorded in Deed Book No. 9, page 483, of the register's office of Smith county, and saying, "a certified copy of which will be filed on or before the hearing, if necessary." It was alleged that Fannie M. Jordan owned the entire life estate in the property, and that her children jointly owned the remainder interest therein. It was alleged that the land was a farm situated so that it could not be advantageously partitioned in kind, and that it would be manifestly to the advantage of all concerned that same be sold for distribution of the proceeds. The complainant Fannie M. Jordan alleged that she was willing that the land be sold, and that she be paid the value of her life estate, and the remainder distributed among her children. Some of the reasons given by her for consenting to the sale are that she is unable to run and manage the farm profitably, and

Jordan v. Jordan.

that her adult children are anxious to establish them-
selves in business, and that her minor son is away from
home attending school, and it is important that he finish
his education.    The bill mentions the fact that the prop-
erty is encumbered with a trust deed to secure the sum of
$7,500, which is a lien against the interests of Mrs. Jor-
dan and her three adult children.    The trustees in the
trust deed and the persons to whom the encumbrance is
owing, to-wit, H. B. Cox and W. W. Jenkins, and who
subsequently became the purchasers of the land, and who
are now seeking to be relieved of their purchase, were
named as defendants to the bill, and it is alleged that they
were willing for the land to be sold subject to the encum-
brance against it.

A guardian *ad litem* was duly appointed to represent
the minor defendant, and a formal answer was filed, but
this answer was not sworn to.

The chancellor referred the case to the master with di-
rections to take proof and report:

(1) Who are the owners of the lands and in what shares
or proportions the same is owned.

(2) What encumbrances, if any, are on the land.

(3) Is the land so situated as that it cannot be ad-
vantageously partitioned in kind, so as to give to each of
those entitled to share therein a suitable home?

(4) Would it or not be to the advantage of those in-
terested to have the land sold for distribution of the pro-
ceeds.

(5) If the land should be sold, upon what terms the sale
should be made.

(6) What is the age of the life tenant, Mrs. Fannie M.
Jordan.

Upon this order of reference considerable testimony was taken, and the master reported:

First, that the lands described in the pleadings are owned as follows: Mrs. Fannie M. Jordan is the owner of the entire life estate in said land, and the remainder interest in the same is owned in equal shares by Howard Y. Jordan, John M. Jordan, Will A. Jordan, and Albert Fite Jordan.

Second, the only encumbrance on the land is one for $7,500 on the shares of Fannie M. Jordan, Howard Y. Jordan, John M. Jordan, and Will A. Jordan, which is a mortgage to secure said amount to W. W. Jenkins, due June 23, 1924.

Third, said land is so situated that it cannot be advantageously partitioned in kind so as to give to each of those entitled a suitable home.

Fourth, it would be manifestly to the advantage of all concerned that the same be sold for a division of the proceeds of sale. The said Fannie M. Jordan, owner of the life estate, agrees to accept the present cash value of her said life estate.

Fifth, said lands should be sold for one-fourth cash, and the remainder in equal installments due in one, two, and three years from date of sale with notes drawing interest, payable annually, with a lien retained on the land. The land is susceptible to a subdivision into two or more tracts, and should be offered separately and as a whole, and the sale made the way the most money is realized.

Sixth, the life tenant, Mrs. Fannie M. Jordan, is fifty years old. The land should be sold on the premises.

The report of sale was filed by the master on October 2, 1920. It was confirmed by decree pronounced at cham-

bers on October 18, 1920, without any certificate from the clerk and master under seal that there was in his opinion no prospect of the bid being raised.

The caption of the confirmatory decree reads:

"Be it remembered that this cause came on to be heard before Hon. W. R. Officer, chancellor sitting at chambers in Gainesboro, Tenn., it being agreed by counsel and parties on both sides that the matter be heard at chambers on this, the 18th day of October, 1920, upon the record in this cause, and especially upon the report of sale filed by the master, which report is in the following words and figures, to-wit."

After reciting the report of sale, the decree proceeds to adjudicate that all the right, title, claim, and interest which any of these parties, Fannie M., Howard Y., John M., William A., Jr., and Albert Fite Jordan, and H. B. Cox, trustee, and W. W. Jenkins, have in and to the tract of land described in the pleadings and hereinafter set up by metes and bounds, be, and the same are hereby, divested out of them and vested in the purchasers of the same, subject to a lien declared to further secure the payment of the unpaid purchase money.

The decree then recited:

"It appearing to the court that Mrs. Fannie M. Jordan was the owner of the entire life estate in said tract of land, that she has agreed and does agree to accept in lieu thereof the present cash value of said life estate to be paid to her out of the proceeds of this sale, that at her present age, she being fifty years of age and being in reasonably good health, she is entitled to sixty per cent. of the net proceeds thereof, it is therefore decreed that after the payment of costs and expenses of

sale that out of the proceeds of said sale she be paid sixty per cent. of the same. It also appearing that the remainder interest in said land after the payment of said life estate belonged to the complainants Howard Y. Jordan, John Jordan, William A. Jordan, Jr., and the defendant Albert Fite Jordan, it is decreed that said remainder, after the discharge of the present value of the life estate, be distributed to them equally. It further appearing that heretofore said Fannie M. Jordan, Howard Y. Jordan, John M. Jordan, and William A. Jordan, Jr., had executed a mortgage to H. B. Cox, trustee, on their respective shares or interests in said land, and that by agreement the shares of said Howard Y. Jordan, John M. Jordan, and William A. Jordan, Jr., are to be charged respectively with $1,000 each of the amount due on said mortgage, and that the share of Mrs. Fannie M. Jordan is charged with the remainder of the mortgage, it is so decreed, and out of the cash payment required by a former decree said mortgage will be paid, and the respective shares above mentioned will be charged accordingly."

The decree provides for the purchaser to be given full possession of the property on January 1, 1921. The decree allows fees to be paid out. of the funds to the complainants' solicitors $1,750, and to the guardian *ad litem* $250. The decree also allows the clerk and master as compensation for his services the sum of $775. It provides for the payment of the cost of making a survey of the land, $31.90, and the taxes on the land for the year 1920. The decree provides that after payment of the costs and expenses aforesaid the clerk will distribute the remainder of the cash payment to those entitled as shown by the decree.

At the first regular term of the chancery court following the sale made by the clerk and master, and on March 10, 1921, the purchasers W. W. Jenkins and H. B. Cox were permitted to file the petition which presents the matters now under consideration, and an order by the court was made requiring all the parties to the cause, they being named as defendants to the petition, to make defense thereto without service of process, except the minor defendant, Albert Fite Jordan.

The averments of this petition material to the present inquiry were these:

(1) The filing of the original bill and the fact that it alleged that Mrs. Fannie M. Jordan owned the entire life estate, and that her children jointly owned the remainder interest therein.

(2) That the deed referred to in the bill, copy of which it was said would be filed on or before the hearing, was not filed with the papers, and the petitioners did not know whether or not it was before the chancellor when the order of sale was made. In this connection the language of the deed itself is set forth, and it is alleged to be:

"Said deed is in the words and figures following, to-wit: 'For and in consideration of the love and affection that I have for my daughter, Fannie M. Jordan, I hereby give, grant, and convey unto her, to her sole and separate use, free from the contract, debts, and liabilities of her present or any future husband, for the life of said Fannie M. Jordan, and at her death to their children, the following described tract of land, in Smith county, Tennessee, near Dixon Springs, and bounded as follows: N. by W. A. and Fannie Jordan; E. by W. A. Hesson and Sallie Grubbs and others; S. by J. P. Merryman and Hartsville and

Carthage Pike; W. by A. J. Bradley, D. C. Black and J. D. Allen—containing four hundred and sixty acres, more or less and known as the Bradley tract.

" 'To have and to ʰld unto said Fannie M. Jordan, for life, to her sole anɾ separate use and benefit, and free from the contracts, debts, or liabilities of her present or any future husband, and at her death to go to her children. I am lawfully seized of said land and the same is unincumbered, and I will defend and warrant the title to the same. This March 2, 1895.' "

It was alleged that under the deed, while Fannie M. Jordan owned the life estate in the whole property, her children did not have any vested interest in the same, but that their interests are contingent and such as that they had no right to have the land sold for partition, and that the life tenant had no right under the deed to have her life estate carved out or to have said lands sold for partition.

It was alleged that the petitioners did not know of the language of the deed and were not advised of its legal import, but supposed the allegations of the bill with respect to the ownership to be true until after the sale was confirmed, and that as soon as they learned of the probable defect in the title they employed counsel to investigate and bring such action as was necessary to protect them as purchasers, and that the petition was in fact filed at the earliest opportunity thereafter.

(3) It was alleged that the action of the chancellor in confirming the sale was void because the same was confirmed within less than thirty days after the report of sale had been filed, and there was no certificate under seal of the clerk and master that in his opinion there was

Jordan v. Jordan.

no reasonable prospect of the bid being raised as much as three per cent.

(4) That after the sale of said land Mrs. Jordan and her children had removed valuable timber from the property and had cut other valuable timber which would belong to the petitioners if the title is good; that after confirmation of the sale Mrs. Jordan permitted the Smith County Electric Company to run a line of poles and wire over the farm to the damage of the petitioners of several hundred dollars.

(5) That soon after the day of sale they paid $3,300 in cash and assumed payment of said deed of trust which was against the property, making in all a cash payment of $10,923.75, and they ask that in case the sale should be set aside that this satisfaction of the mortgage lien be also set aside, and the purchasers be put in *statu quo*.

(6) That on account of the unsettled condition of the title of the property a receiver should be appointed to take charge of it and rent it out pending this litigation, and that the collection of the purchase money notes be deferred and the notes themselves canceled.

(7) That they had had an opportunity to sell the land at a profit had the prospective purchasers not been afraid of the title.

(8) The portions of the prayer of the petition necessary to be considered are:

"Petitioners pray that said sale of said land be set aside and declared null and void, and that they recover of the parties defendant to this petition the amount of money they have paid on the purchase price of said land, with interest from the date of sale, October 2, 1920, and that said sum so paid be declared a lien upon the interest of

the parties in said land, and, if necessary, let said land be sold to pay said lien.

"Petitioners further pray that, if necessary, this petition may be treated as a bill of review to the end that complete justice may be done, and that said sale may be set aside, or, if said sale should not be set aside, then that petitioners be vested with an indefeasible title in fee to the land purchased by them, and that the court may make such further orders and decrees as may be necessary to fully protect petitioners in their rights to said property."

The minor defendant to this petition, Albert Fite Jordan, having been served with process, appeared in person and by guardian *ad litem* duly appointed for him, and answered it, the answer being sworn to by Albert Fite Jordan in person. This answer, after admitting the filing of the bill, its contents, and the procedure of the court thereunder, denies that the sale was void for the reasons set up in the petition; denies the rights of the petitioners to file a bill of review; denies that there is any error in the record; denies that his interest in the land was contingent, but he says:

"However, he is entirely willing that this court make such additional orders and decrees in the original cause touching the disposition of the fund arising from the sale of said land as in the judgment of the court may be proper and necessary to protect the interests of any person or persons *in posse* who may ultimately have an interest in said fund; if the court should be of opinion that the remainder is contingent, he is willing that such orders go to the extent of segregating and preserving intact during the lifetime of the life tenant the whole of said fund, or that the whole thereof be reinvested, if such should appear to the court proper or necessary."

The adult defendants also answered the bill, and, after admitting the filing of the original bill, contents, and the procedure alleged to have taken place thereunder, denied that the sale was void or that the petitioners did not receive a good title thereunder.

For further answer to this petition the defendants say that while not admitting that there were any errors or irregularities in the proceedings that could in any way affect the title and interest of the petitioners—"yet they desire to state and do now state that it is their desire and wish, and was their intention and purpose at all times, that petitioners should be vested with an absolute and indefeasible title to said land. They do not desire to embarrass them, but, on the contrary, honestly seek to take such steps as may be necessary to relieve petitioners from any embarrassment that has or may arise from any doubt as to their title to said tract of land. And to this end they ask that the court now make such orders and decrees that may fully preserve and protect the funds arising from said sale, so as to keep the same intact, giving to the life tenant the proceeds thereof until such time as such funds may come rightfully into the possession of those entitled thereto, or such orders as the court deems proper to make."

It is further said in the answer that practically all of the proceeds of the sale are now in the hands and under the control of the court and subject to its orders, and that, if the remainder of said fund shall be safeguarded by decree of this court as above indicated, no one, either as remainderman or possible reversioner, could complain, and therefore there could be no doubt raised as to the title of petitioners to said land.

As a reason why said sale should not be set aside it is alleged that the land brought an unusually high price, that the parties were fortunate in having sold at a time when farm land was unprecedently high, and that the price paid was several thousand dollars in excess of what it could be sold for now, as since the sale farm lands have depreciated very largely in value, and it will likely be many years, if ever, before it could be sold for as much as it brought then, and therefore it was largely to the interest of all parties that the sale to the petitioners should be ratified.

The answer sets up quite a number of reasons not necessary to mention why it would be to the advantage and interest of the life tenant and her children that the sale should not be set aside, among them the following:

"As stated in her original bill, her children are all boys, three of whom are married, and, being adults, have passed beyond her help and control. Her son Howard Y. Jordan is and has been for some time in the State of Alabama, where he is established in business; her son William A. Jordan, Jr., is at this time located in the State of Missouri, where he went since the sale of this land, where he is now located and established in business; her son John M. Jordan is, and for some time past has been, engaged in taking a law course at Lebanon, Tenn., and is preparing to locate in California, in connection with his uncle, who is a lawyer; and her only other son, Albert Fite Jordan, being now nearly seventeen years of age, is in school in Maury county, Tenn., where he will have to remain for some time yet to complete his education. Her husband, W. A. Jordan, Sr., is in business in the State of Virginia, where he is permanently located. She states that neither her hus-

Jordan v. Jordan.

band nor any of her boys has any turn toward farming, and what efforts they have made in that direction have been very unsatisfactory, distasteful to them, and unprofitable. Under these circumstances it would be impossible for her to live on this farm, and to rent the same out would certainly result in deterioration and inevitable loss to all concerned.

"She further states that, notwithstanding she and her family until recently have been living on said farm, yet for several years—in fact, every since they have lived on it —it has been operated at a loss, owing to the fact that neither her husband nor her sons were practical farmers and took but little interest in the same. She also states that under these circumstances for several years, from time to time, she has been compelled to borrow money to make needed repairs on the place, to pay taxes, and conduct the farm and farming operations as best she could. A number of these debts are now outstanding against her. She states that the mortgage executed to petitioners W. W. Jenkins and H. B. Cox, mentioned in the original bill, was for borrowed money with which to build the main dwelling house now on the land, and to pay other obligations incurred while trying to keep up said farm.

"She also states that during the last several years the fencing and outhouses and other improvements on the place have been continually going down, and now it will take a considerable sum of money to put the fences, tenant houses, etc., on the place in reasonable repair.

"She further states that it would be impossible for her, she fears, even on a proper showing thereafter, to have the place sold even for reinvestment for anything short of a sacrifice, if she was again compelled to take it back by

a rescission of the sale in this case, owing to the fact that under those circumstances prospective purchasers would not bid on the place after a sale of the same by the chancery court had been previously set aside on account of the title.

"She also states that, as a result of petitioners' prayer for a rescission being granted, the entire burden thereof would fall on her as the life tenant, for the reason that, if it is now held that her children only have contingent interests, then said interests would not be subject to levy, nor could be reached for any obligation they might have, and the life estate of the life tenant would be the only interest out of which said payment of $3,300 and the mortgage, if reinstated, of $7,500 and interest, could be reached. She states that she has no other means or property outside of this land or the proceeds thereof, and neither have any of her children.

"The other respondents hereto agree to and indorse the foregoing statements of the said Fannie M. Jordan in every particular.

"Respondents state that said petitioners W. W. Jenkins and H. B. Cox are successful business men of practical affairs, one, H. B. Cox, being a successful merchant and a man of good judgment, and the other, W. W. Jenkins, is a large landowner, being the owner at this time and at the time of the purchase of said land in question of other lands amounting to some two thousand acres or more; that they have already taken charge of and are now in possession of the land bought in this cause and can operate the same with profit to themselves.

"They again insist that under the proceedings in this cause under which said land was sold to the petitioners

they acquired an absolutely good and indefeasible title thereto, but, if the court thinks that other orders or decrees are necessary to remove all doubt and uncertainty about said title, these respondents are willing that the same be done, and joined with petitioners in their closing prayer to that end."

The cause came on to be heard before the chancellor (presumably at the regular term of the court, the record does not affirmatively show when) by agreement of all parties upon the entire record, and the court took the entire record and questions presented thereunder under advisement, and subsequently pronounced a decree on the 29th of March, 1921. This decree adjudicates:

"(1) That the petition of W. W. Jenkins and H. B. Cox cannot be heard or treated as a bill of review, and is not allowed as such, but is entertained by the court as their offer to comply with the former decree in the cause confirming the sale, upon vestiture in them of a good and indefeasible title to the land involved.

"(2) That upon the record as now made up the sale of the land heretofore made and confirmed to Messrs. Jenkins and Cox may be ratified and confirmed by the court, if manifestly for the interests of Fannie M. Jordan, the life tenant, and her children, as averred in the answers to the petition, and, to the end that the facts may clearly appear to the court, the cause is referred upon this question to the master, who from the proof on file and such proof as may be offered will report: (a) Whether or not it is manifestly for the interest of Fannie M. Jordan and her children that said lands be sold or the sale heretofore made to Jenkins and Cox be confirmed; (b) whether the sale heretofore made and confirmed by the court was for a full,

fair and adequate consideration.  He will base his reports and conclusions upon the facts shown by clear and positive proof, and not from the opinions of the witnesses.

"(3)  Upon the application of petitioners, Jere Gardenhire, clerk and master, is appointed receiver, and will take charge of the land and rent same for the present year, taking a note for the rents, secured by personal security, and retaining a lien upon the crops grown, and he may rent at public or private vendue, as to him may seem best ow- ing to the lateness of the season for renting.  However, the said petitioners, being in possession, will not be disturbed if, within ten days from the entry of this decree, they file their offer in writing to pay into the court, if required to do so, the reasonable rental value of the lands for the present year, with security that their offer will be complied with, the payment of rentals to be required only upon condition that it may be afterwards decreed that the sale under which petitioners went into possession was void, and the purchase money paid by them required to be refunded.

"(4)  It is further decreed by the court that the deed from J. H. Young, deceased, to Fannie M. Jordan and her children conveyed to her a life estate in the entire tract of land for her lifetime, with remainder to her children, and that the remainder was contingent, and will not vest until the death of Fannie M. Jordan, the contingency being the existence of children at her death; that said children take as a class.

"(5)  That all parties having a possible interest in said land are before the court who are in being, and those *in posse* have virtual representation, and the court, having jurisdiction of the parties and the subject-matter, has full

power to make a decree that will protect the rights and interests of those *in esse* and *in posse* as well.

"This hearing was had upon the petition of W. W. Jenkins and H. B. Cox, the answers thereto, and the records in the original cause exhibited thereto."

An appeal from this decree of the chancellor by all parties was denied. Subsequently proof was taken on the various matters adjudicated and referred to the master.

The cause then came on to be heard on July 11, 1921, as recited in the minute entry—"by agreement of the original complainants, the petitioners W. W. Jenkins and H. B. Cox, and the guardian *ad litem* for the minor defendant, upon the whole record, including the petition of the said Jenkins & Cox, and the answers thereto, and the report of the master upon the reference heretofore ordered."

The master had reported from the proof, giving his reasons therefor: First, that it was manifestly to the advantage of Mrs. Jordan and her children that the land be sold; and, second, that the sale heretofore made to Jenkins and Cox be ratified by the court, and that the sale theretofore made and confirmed was for a full, fair, and adequate consideration.

This report being unexcepted to, it was in all things confirmed, and it was decreed:

"That the sale of the land heretofore ordered on October 2, 1920, made by the master to W. W. Jenkins and H. B. Cox, is hereby ratified and confirmed by the court, and that all right, title, interest, and estate in and to the land described in the pleadings of the complainants, Fannie M. Jordan, W. A. Jordan, Howard Y. Jordan, William A. Jordan, Jr., John M. Jordan, and the defendant, Albert

Fite Jordan, and also all the right, title, interest, or estate of any and all children that may hereafter be born to the complainant Fannie M. Jordan, be divested out of them and each of them and vested in the purchasers, W. W. Jenkins and H. B. Cox, as tenants in common, as an indefeasible fee in fee simple forever.

"Said tract of land is described as follows, to-wit: Beginning at a stake in the road in Mrs. Bradley's (now John Bell Winkler's) south boundary; running thence east fifty-two poles to a stake; thence north three hundred eighty-five poles to a stake; thence east one hundred forty and one-half poles to a stake; thence south two hundred seventy-five poles to a stake; thence east ninety-two poles to a beech on the branch; thence down said branch, with its meanders, one hundred eighty-four poles to a stake; thence south eighty-three and one-half degrees west ninety-eight poles to a beech on the bank of the creek; thence south thirty-two and one-half decrees west with the road one hundred twenty poles to the beginning, containing four hundred sixty acres, one rod, and eleven poles, more or less.

"It is further adjudged and decreed by the court that there shall be no present distribution of the *corpus* of the fund arising from the sale of the land in this cause, and the master is directed to hold all funds so collected subject to the future orders of the court."

From this decree the petitioners Jenkins and Cox appealed to the court of civil appeals, by which court the decree of the chancellor was in all things affirmed. A writ of *certiorari* has been alowed to the end that the opinion of the court of civil appeals may be reviewed by this court.

The errors assigned by the purchasers have been divided into seventeen in number, but all of them fall under certain propositions which we shall consider in the order deemed most convenient for that purpose.

1.  It is contended that the sale to the purchasers is void and should not be ratified or confirmed upon the ground the confirmatory decree of October 8, 1920, was pronounced at chambers at a time when under the law the chancellor was without power to confirm a land sale. This contention is predicated upon the provisions of chapter 248 of the Acts of 1903, as amended by chapter 427 of the Acts of 1905, carried into Shannon's Code at sections 6228A1 and 6228A5.

Certainly the chancellor was without power and his action was void in pronouncing this chambers decree unless the power and authority therefor is found in the acts above referred to. A court cannot validly adjudicate the subject-matter which does not fall within its province as defined and limited by law. *Chickamauga Trust Co.* v. *Lonas,* 139 Tenn., 228, 201 S. W., 777, L. R. A., 1918D, 451.

The mere consent of parties or waiver of the court's action cannot confer power upon the court to act in cases where it is not conferred by law. His action is a mere nullity, absolutely void, and subject to collateral attack.

The act of 1903 authorized chancellors of the State to hear and determine in vacation and at chambers all issues and questions arising on demurrers, dilatory pleas, motions, and applications to amend pleadings in any cause pending in their respective divisions. This authority was conferred in section 1 of the act, but it did not authorize chambers decrees for final determination of cases whether the parties consent or not, except by section 2 of the act

the right and power to confirm land sales was conferred "where the report of sale has been on file for a period of thirty days and has been unexcepted to and biddings have not been raised, and where the clerk and master certifies under seal there is in his opinion no reasonable prospect of the bid being raised as much as three per cent." It is also provided in this same section that "no sale shall be confirmed unless the parties in interest and their solicitors of record shall have been given ten days' notice of the time and place of said application." Thus it will be seen that the act of 1903 only conferred the right and power upon chancellors to confirm land sales at chambers in those cases where the report of sale had been on file for a period of thirty days and was unexcepted to and when other conditions named in the statute had been complied with.

But it is contended that the act of 1905 which authorized chancellors to also hear and determine by final decree causes where the parties and their solicitors of record consent to such hearing had the effect to confer authority to confirm land sales where the parties consented unconditionally.

The act of 1905 amended the act of 1903 so as to add to the powers of chancellors the right "also (except in divorce cases) to hear and determine by final decree, any such cause when the parties or their solicitors, consent to such hearing." But in connection with this clause of the amendment there must be read the further provision therein as follows:

"And for any action desired (except to confirm sales where ten days' notice is required, and except where the cause is to be tried, in which event the consent herein mentioned shall be necessary)."

As amended the act, in so far as it reflects upon the present inquiry, reads that (the amendment is in capitals)— "Chancellors of this State shall have the right to hear and determine in vacation and at chambers all issues and questions arising on demurrers, dilatory pleas, motions, and applications to amend pleadings in any cause pending in their respective divisions; also (EXCEPT IN DIVORCE CASES) TO HEAR AND DETERMINE BY FINAL DECREE, IN ANY SUCH CAUSE WHEN THE PARTIES OR THEIR SOLICITORS, CONSENT TO SUCH HEARING; AND FOR ANY ACTION DESIRED (EXCEPT TO CONFIRM SALES WHERE TEN DAYS' NOTICE IS REQUIRED, AND EXCEPT WHERE THE CAUSE IS TO BE TRIED, IN WHICH EVENT THE CONSENT HEREIN MENTIONED SHALL BE NECESSARY). If the parties do not consent, then the party desiring such action shall give notice in the same way and manner as now provided by law in the manner of motions to dissolve injunctions."

Bearing in mind that the act of 1903 made special provision with respect to the chancellor's power to confirm land sales at chambers, and that this special power was unaffected by any direct amendment in the act of 1905, we must conclude that the provisions of the original act were not to be affected by the amendment unless an intention to do so is shown by express words. The language of the amendment not only does not show an intention to modify the requirements with respect to confirmation of land sales, but rather an intention not to do so. In conferring power to hear and determine by final decree any cause where the parties consent to such a hearing, there is an exception made with respect to confirming land sales. At

casual glance it might be thought that the parenthetical clause "except to confirm sales where ten days' notice is required" was intended merely to amend the requirements with respect to notice, but, taking the act as a whole in connection with the amendment, the evident intention was not to confer power and authority upon the chancellor to confirm land sales except in the instances and under the conditions stated in section 2 of the act of 1903. The purpose of the parenthetical clause was to indicate that in those cases where the chancellor had been given the power to confirm land sales the length of the time of the notice required should remain as provided for by the act of 1903, while fixing a different time for final decrees in other matters.

We conclude, therefore, that the chancellor was entirely without power or authority to pass the chambers' decree of October 18, 1920, confirming the sale of this land to the petitioners.

It does not follow, however, that the petitioners are entitled to be relieved of their purchase by reason of the invalidity of the confirmatory decree. If there had been a valid and proper decree of sale, and the petitioners became the purchasers at such a sale, and there was no other irregularity, the invalidity of the confirmatory sale could have been easily cured by a decree at the regular term of the court confirming the sale. In other words, at the succeeding term of the court the case stood as if no action at chambers had been taken at all, and the sale would come on regularly upon the report of the master for confirmation. This defect in the proceedings is therefore immaterial, except as it may reflect upon the attitude of the parties in connection with other objections urged by the peti-

tioners to the decree of the chancellor and the court of civil appeals.

2. This brings us naturally to a consideration of the question of whether there was any defect in the title obtained by the purchasers from which they seek to escape. The decree ordering the sale was one for partition based upon the averments of the original bill that Mrs. Jordan was the owner of the life estate, and her children, three of whom were complainants and the other a defendant, were the owners of the remainder. If the parties in fact owned the land as alleged in the bill and as assumed in the decree of sale, there could be no basis for complaint by the purchasers. But it is contended that, while Mrs. Fannie M. Jordan took a life estate in the property, the remainder interest was contingent, and not vested.

The entire language of the deed necessary to be considered in this connection is this:

"For and in consideration of the love and affection I have for my daughter, Fannie M. Jordan, I hereby give, grant, and convey unto her, for her sole and separate use, free from the contract, debts, and liabilities of her present husband or any future husband, for the life of said Fannie M. Jordan, and at her death to their children, the following described tract of land," etc.

The chancellor decreed on this question as follows:

"It is further decreed by the court that the deed from J. H. Young, deceased, to Fannie M. Jordan and her children conveyed to her a life estate in the entire tract of land for her lifetime, with remainder to her children, and that the remainder was contingent, and will not vest until the death of Fannie M. Jordan, the contingency being the

existence of children at her death; that said children take as a class." ·

This question is concluded by the cases of *Sanders* v. *Byrom,* 112 Tenn., 474, 79 S. W., 1028, and *Tate* v. *Tate,* 126 Tenn., 173, 148 S. W., 1042. In the former case all of our cases which had dealt with the subject up to that time were collated and classified, and the rule therein announced was adhered to and reaffirmed in the Tate Case.

It was said therein: "The authorities of this State are clear that, where the facts of a case bring it within the class doctrine, the case must be controlled by that doctrine, and not by the common-law rule. Under the class doctrine 'the estate vests in the described class as a class, and not individually in the persons composing such class, and the entire subject of the gift survives to and vests in the persons constituting such class at the period when payment or distribution of the fund is to be made.' *Satterfield* v. *Mayes,* 11 Hum., 60."

The class rule or doctrine as recognized in the cases supra is taken from the leading case of *Satterfield* v. *Mayes,* 11 Humph., 58, and is stated therein to be:

"Where a bequest is made to a class of persons, subject to fluctuation by increase or diminution of its number, in consequence of future births or death, and the time of payment or distribution of the fund is fixed at a subsequent period, or on the happening of a future event, the entire interest vests in such persons only as at that time fall within the description of persons constituting such class. As, if property be given simply to the children, or to the brothers or sisters of A., equally to be divided between them, the entire subject of gift will vest in any one child, brother, or sister, or any larger number of these objects, surviving

at the period for distribution, without regard to previous deaths.   Members of the class antecedently dying are not actual objects of the gift."

From the cases the court deduced: "It is observed that there ar; three elements in the rule.   One is that there must be a class of persons subject to fluctuation by increase or diminution of its number; second, that the bequest must be to the class; and, third, that the time of payment or distribution must be fixed at a subsequent period."

The title in the *Sanders* v. *Byrom Case* was derived from a deed in which the controlling language is as follows:

"On the 27th day of October, 1852, James B. Stovall executed a deed, in which he disposed of certain property as follows: To E. A. Ikard, in trust for his daughter, Virginia Stovall, 'for and during her natural life, and at her death to her children forever; . . . that is to say, for the sole and separate use and benefit of my daughter, Virginia, during her natural life, and at her death to go to her children forever.' "

With respect to this the court, applying the class rule, said:

"We think it must be held under the authorities, that the present case falls within the rule.   That a devise or conveyance to children without indicating any special individual or individuals creates a provision in favor of a class of persons we think there can be no doubt.   That such a class of persons is subject to fluctuation by increase or diminution there can equally be no doubt.   That the death of the prior holder of an estate may be made the event upon which the distribution is to turn is equally clear under the authorities.   The present case falls within every element of the rule, and must therefore be governed by it."

In the Tate Case the title was derived from a will the controlling clauses of which were:

"Item II.   My entire estate, real and personal and mixed, and wherever situate, I give, devise and bequeath to my husband John T. Hillsman, his heirs and assigns, in fee simple, in trust, nevertheless, to hold the same for his own use, benefit and behoof, during his natural life, and at his death to be equally divided between my children, share and share alike, and in fee, the issue of any child that may have died to represent and take the share of the deceased parent."

With respect to this title the court said: "Thus appears with great distinctness one of the elements of the class doctrine; that is, that the time of distribution must be fixed at a period subsequent to the time when the will goes into effect—that is, subsequent to the date of the death of the testator. This period of time may be the end of a number of years designated in the will, or at the death of a life tenant, or upon the happening of any future event indicated in the will.   Next it appears that the devise is not to the two daughters of the testatrix, *nominatim,* but to the children of testatrix, and, in case any child should be dead at the death of the life tenant, then to the representatives of such child or children.   It was impossible to say, at the date of the execution of the will, or at the death of the testatrix, what persons would, at the death of the life tenant, answer the description of children of testatrix, or representatives of such children, as either one of her two daughters might die before that time, or both might die, and leave children, and among these children 't might be that there were several born between the death of the testatrix and the death of the life tenant, and some

of these might die and others be born, and thus the bene-
ficiaries of the devise were subject to fluctuation, either
by diminution or increase. That is to say, while there
could be no increase in the number of testatrix's children,
yet there might be a decrease and both increase and de-
crease in the representatives of the children, who might
finally be the persons to take upon the death of the life
tenant. So we have here the other two elements of the
class doctrine—a devise to a class and that class one
subject to fluctuation, thus making the three elements that
must appear under that doctrine."

In *Forrest* v. *Porch,* 100 Tenn., 391, 45 S. W., 676, the
will provided:

"I give and bequeath to my beloved wife, Ollie P. Reece,
a certain tract or parcel of land, containing, by estimation,
about one hundred acres, and bounded as follows: . . .
To have and to hold as long as she lives; at her death the
said land is to be divided between my heirs at law."

With respect to this the court said: "This is an explicit
devise of land to the widow during her life, with remainder
in fee to the 'heirs at law' of the testator. The chancellor
treated the remainder as vested, but the court of chan-
cery appeals was of the opinion that it was contingent.
We concur in the latter view. The remainder was con-
tingent, because the testator obviously intended that the
land be divided at the death of his widow among such
persons as should then sustain to him the relation of heirs
at law. The remaindermen are to be ascertained, not at
his death, but at the death of his widow, the life tenant;
and they are to be such persons as would at that time be
his 'heirs at law.' At his death, when the will took effect,
those persons were 'dubious and uncertain,' therefore the

remainder must be contingent. *Bigley* v. *Watson,* 98 Tenn., 358, 359, and authorities cited."

*Bigley* v. *Watson,* 98 Tenn., 354, 39 S. W., 525, 38 L. R. A., 679, is another case illustrating this question. In that case the title was derived from a decree which vested the title in Sarah A. Watson "for her sole and separate use during her life and at her death to her children then living and the issue of such as may be dead." Mrs. Watson, assuming to be the owner in fee of this land, devised the land to her husband, who sold a part of the land and mortgaged a portion. At the time of this decree Mrs. Watson had two children, but both of them died without issue in her lifetime. The heirs at law of Mrs. Watson brought suit against the vendees of the husband, who was the devisee under the will, claiming that the remainder did not become vested by the decree in her children, but was contingent, and, the children having died without issue before she did, the property descended to her heirs at law. The court said:

"That part of the decree which adjudged that the lands allotted to Mrs. Watson should pass, 'at her death, to her children then living and the issue of such as may be dead,' created a valid contingent remainder in fee. The interest given was a remainder in fee, because it comprised the whole residue of the estate (4 Kent., 198; 2 Black., 163; 2 Wash. [5 Ed.], 585), and it was contingent rather than vested, because limited to take effect in 'dubious and uncertain' persons, as under Blackstone's first class and Fearne's fourth class of contingent remainders (2 Black., 169; Fearne's Contingent Remainders, 3-9, 4 Kent., 206, 207, 608, 614)."

Whatever criticism the soundness of the doctrine announced and applied in the cases to which we have referred may be subject to, it is too firmly fixed in our jurisprudence to be disturbed now, and it necessarily follows that the remainder created by the deed to Mrs. Jordan is contingent, and not vested. The deed was executed March 2, 1895. At that time she was married to her present husband and both of them are still living. She has four children at this time, three of whom are adults and married. The youngest was nearly seventeen years old in March, 1921, and was therefore born after the execution of the deed. Just the ages of the adults is not shown, but that is immaterial.

There is no merit in the suggestion made in the brief of counsel for Mrs. Jordan that she is past the age of childbearing, and that therefore the interests of her children should be treated as vested.

The possibility of the birth of other children must be taken into consideration. See *Bigley* v. *Watson*, wherein on this subject the court said:

"Mrs. Watson was an old woman when she died, and it is suggested that, on account of her advanced age, she was entirely incapable of bearing other children for years after the death of the two born to her when younger, and therefore that the remainder came to an end, and she was again full owner of the land some time in advance of her own decease, and while she still survived. This suggestion, so far as involving a conclusion of law, is unsound, because based upon an assumed impossibility of other issue to Mrs. Watson after she had grown old. Lord Coke says, 'The law seeth no impossibility of having children' (Coke Litt. 28), and Blackstone says, 'A possibility of issue is

always supposed to exist, in law, unless extinguished by the death of the parties, even though the donees be, each of them, a hundred years old' (2 Blackstone, 125).

"This rule of law has been recognized and applied in several American cases. In *State* v. *Lash* the supreme court of New Jersey briefly remarked that, 'by common law, the possibility of issue is commensurate with life.' 1 Harrison, 388 (s. c., 32 Am. Dec., 401). In a comparatively recent case the supreme court of Pennsylvania used this emphatic language, namely: 'The rule has stood the test of time and received the sanction of ages. . . . Nature has fixed no certain age, by years, at which a childbearing capacity shall begin and end. . . . The presumption of law is in favor of issue, notwithstanding advanced age.' *List* v. *Rodney,* 83 Pa., 483.

"This court, in deciding the case of *Garner* v. *Dowling,* said: 'It is stated in the bill that Mrs. Garner (the life tenant) is past the time of life when she may reasonably be expected to bear children; but her age is not shown, and, if it were, in legal contemplation, it is not impossible she may have children, and the contingency is not determined until her death.' 11 Heis., 52. See, to the same effect, 2 Lead. Cases, Am. Law of Real Property (Sharswood & Budd) 251-253, citing this case and others."

Certainly we have in the instant case the three elements essential to the application of the class rule: (1) A class of persons subject to fluctuation by increase or diminution; (2) conveyance to a class; and (3) a time of distribution fixed at a subsequent period.

Neither one of her children may be living when the life estate falls in by the death of Mrs. Jordan. One or more children may be born who may or may not take all or a

part. The entire remainder may fail and the title vest in other heirs at law of the grantor; in other words, this remainder is contingent, so that at this time it cannot be ascertained in whom the title may eventually vest.

It follows, therefore, that the petitioners did not obtain a good title to the property by their purchase made at the sale originally ordered by the decree in the original bill. And, nothing else appearing, they would be entitled to rescind their purchase and to be repaid what they had paid and placed *in statu quo.*

3. It therefore becomes necessary to inquire whether the decree of the chancellor which undertook to cure this defect constitutes a legal obstacle to the right of the petioners to have their purchase rescinded. The chancellor proceeded upon the theory that, notwithstanding the invalidity of the confirmatory decree and the defect in the title obtained by the purchasers, all parties who are in being having a possible interest in the land were before the court, and those *in posse* having virtual representation, the court had power and jurisdiction to make a decree that would vest in the purchasers a perfect title, and, conceiving that the pleadings were sufficient to justify him in doing so, after referring the cause to the master to ascertain if it was to the interest of the owners of the land to have the sale ratified, and concluding that it was, proceeded to ratify and confirm the sale and to hold that in view thereof the purchasers were not entitled to avoid their purchase and rescind the sale.

Undoubtedly the court had jurisdiction of all the parties in interest who were in being and of those *in posse,* if they could be virtually represented, and the question arises

Jordan v. Jordan.

whether a good title could be conferred upon the purchasers in the manner in which the court undertook to do so.

The equitable doctrine of virtual representation cannot be invoked merely for the benefit of unknown or unborn persons. There must be a person with an actual interest similar to that of the unknown party in order to bind the party not before the court in person. The doctrine of virtual representation is stated in 20 R. C. L., p. 669, as follows:

"As an exception to the rule that all persons having an interest in the subject-matter of an equity suit must be made parties, the doctrine of virtual representation, which originated at an early date, recognizes the right of a few persons to sue for themselves and all others similarly situated. Under this doctrine the persons who are not joined by name as parties are in a sense before the court. They have been called *quasi*-parties, and have been even said to be parties in substance and legal effect. In all cases to which the doctrine of representation applies there must be joined as parties persons who fairly represent the interest or right involved so that it may be tried fairly and honestly. It is sufficient if the parties before the court enable it fairly and fully to adjudicate the question involved. The parties represented must have a common interest with those before the court, and consequently the parties before the court cannot act as representatives if their interests are antagonistic to those who would be represented. The most frequent application of the doctrine of virtual representation is to members of a class. And while this doctrine has been applied to the members of a class who have a common or general interest, and it is difficult or inconvenient to make them all parties, though

they are not numerous, yet many decisions have established the rule that the doctrine applies only where the persons interested are numerous, so that it would be impracticable or inconvenient to make all of them parties. . . . This doctrine has also been applied in suits relating to property in which an interest has been given to persons not *in esse*. In such cases the owners of the prior estate are generally held to represent the contingent interest of the unborn persons. And even persons who are *in esse,* but who are not ascertained because their interest is contingent or merely expectant, may be represented by the trustee or by the predecessor in title. The representation in such a case must be real, and must be by parties who have an interest to support the rights of the persons not *in esse.*"

In the notes following the case of *Leviness* v. *Consolidated Gas & Electric, etc., Co.,* Ann. Cas., 1913C, 659, it is said:

"The doctrine of virtual representation has been applied in suits relating to property in which an interest has been given to persons not *in esse*. In such cases the owners of the prior estate are generally held to represent the contingent interest of the unborn persons. See the notes of *Denegre* v. *Walker,* 2 Ann. Cas., 787; *Rutledge* v. *Fishburne,* 97 Am. St. Rep., 757. And even persons who are *in esse,* but who are not ascertained because their interest is contingent or merely expectant, may be represented by the trustee or the predecessor in title. *Reynoldson* v. *Perkins,* Ambl. (Eng.) 564 (fee tail estate); *Miller* v. *Texas, etc., R. Co.,* 132 U. S., 662, 10 S. Ct., 206, 33 U. S. (L. Ed.), 487; *McCampbell* v. *Mason,* 151 Ill., 500, 38 N. E., 672, citing *Temple* v. *Scott,* 143 Ill., 290, 32 N. E. 366; *Hermann* v. *Parsons,* 117 Ky., 239, 78 S. W., 125;

*Mathews* v. *Lightner*, 85 Minn., 333, 88 N. W., 992, 89 Am. St. Rep., 558; *Collins* v. *Crawford*, 214 Mo., 183, 112 S. W., 538, 127 Am. St. Rep., 661; *Woolsey* v. *Woolsey*, 78 N. J. Eq., 579, 81 Atl., 1135. The reason for this rule has been stated as follows: 'This rule of representation often applies to living persons who are allowed to be made parties by representation for reasons of convenience and justice, because their interests will be sufficiently defended by others who are personally parties, and who have motives both of self-interest and affection to make such defense, and they therefore consider it unnecessary to make such persons parties, and, indeed, improper to do so, and thus compel them to litigate about an interest which may never vest in them.' *Hermann* v. *Parsons*, 117 Ky., 247, 78 S. W., 125, quoting *Faulkner* v. *Davis*, 18 Grat. (Va.), 690, 98 Am. Dec., 698. But it has been held that a contingent remainderman cannot be represented by another contingent remainderman, *Cannon* v. *Barry*, 59 Miss., 305; or by persons whose interests are adverse to his own. *Bowen* v. *Gent*, 54 Md., 571. The doctrine of virtual representation has, moreover, been held not to apply to vested remaindermen. *Card* v. *Finch*, 142 N. C., 149, 54 S. E., 1009; *Williamson* v. *Jones*, 43 Va., 562, 27 S. E., 411, 64 Am. St. Rep., 891, 38 L. R. A., 694. In South Carolina it has been held that even a contingent remainderman must be made a party. *Walker* v. *Des Portes*, 92 S. C., 515, 75 S. E., 960, following *Mosely* v. *Hankinson*, 22 S. C., 323. Compare *Faber* v. *Faber*, 76 S. C., 156, 56 S. E., 677."

The case of *Ridley* v. *Halliday*, 106 Tenn., 607, 61 S. W., 1025, 53 L. R. A., 477, 82 Am. St. Rep., 902, is authority for the proposition that the chancery court has inherent jurisdiction, without the aid and in the absence of any

inhibition of statute power, to bind and conclude by its decree converting realty into personalty, the rights and interests, whether legal or equitable, vested or contingent, present or future, of all persons, whether *in esse* or *in posse,* and whether *sui juris* or under disability, who are before the court, either by service of process or by virtual representation.    This jurisdiction may be entertained. in suit by the life tenant where there are contingent remaindermen in being to represent those *in posse.*    If a party brought before the court is one of the first class of contingent remaindermen, the decree would bind all other members of the class who subsequently come into being.

The facts of that case in which this doctrine was announced are these:

J. W. S. Ridley by deed conveyed to his son Webb Ridley a valuable farm in Maury county as trustee.    The trusts prescribed in the deed were: The said Webb Ridley, trustee, should permit and suffer his son, William Ridley, for and during his natural life, to have and receive the rents, incomes, and profits of said lands, and to exercise such control over the use, occupation, renting, and cultivation thereof as he, the said William, might deem proper, except that the income was not to be liable for his debts or contracts, and that upon the death of William the land should go to his children and to the living issue of any deceased child, the issue taking the parent's share.    The deed also provided that, in case William left a widow, she should have the right to occupy the land during her widowhood, sharing equally with the children or their issue the rents and profits.    But, if the said William left a widow, but no children, the trustee should permit the widow to receive and enjoy the income of the lands during her life or widow-

hood; that at the death or marriage of the widow without children the land should go to the grantor's other children and to the issue of such of them as might be dead; and that, if the said William should die without widow or children or issue of deceased child or children, the land should go to the grantor's other living children or the issue of such of them as might be dead. The grantor in this trust deed, J. W. S. Ridley, died in 1895, and in 1898 a written proposition was made to the trustee and the life tenant by two parties to purchase this property at the price of $75 per acre upon the condition that they would institute proper proceedings in the chancery court and procure an acceptance of the same.

Thereupon the bill was filed in the name of Webb Ridley and the life tenant, William P. Ridley, to which all persons in interest *in esse* were made parties defendant. The bill, after setting out the deed of trust and the interest created by it, both vested and contingent, and the proposition for its purchase, alleged many reasons why it was greatly to the interest of all concerned that the proposition should be accepted. Answers were filed by the adult defendants and by guardians *ad litem* for the minors. The adult defendants conceded that it would be wise to accept the proposition, but the guardians *ad litem* simply craved the protection of the court. The cause was referred to the master, who took proof and reported that the sale was a very advantageous one and recommended its acceptance. The report was unexcepted to, and the chancellor confirmed it, and at the same time made provision for the investment of the money received for the property so that the interests of all parties, born and unborn, would be preserved in the fund as they existed in the deed.

The cause was taken to the supreme court upon writ of error. It seems that no question was made in the chancery court, by demurrer or otherwise, nor was any objection taken in the supreme court, as to the jurisdiction or power of the court, and the only question made was that, inasmuch as the life tenant was unmarried and without children, the decree pronounced would not be binding upon such children as might thereafter be born upon his possible marriage; the contention being that they were without virtual representation.

This contention of the appellants was based upon the generally recognized rule of jurisprudence that no one is bound by a judgment save parties to the record regularly served or their privies, as well as by the limitations of section 5086, which is a part of the chapter relating to the sale of property of persons under disability, which provides:

"Property so limited that persons not in being may have an estate or interest therein, may also be sold under the provisions of this chapter, if all those interested then in being are before the court, and if it is satisfactorily shown to be necessary, or manifestly for the interest of such persons then in being, having a common interest with those who may come into being."

The limitations of the right given by this section of the Code are found in sections 5073 and 5078 and other sections of this chapter. It is provided by these sections that application must be filed by the husband or regular guardian, and that the person under disability must be represented by next friend or guardian *ad litem,* and that the pleadings shall set forth fully and particularly the age, circumstances, and condition of the party under disability,

what other property, if any, such person owns, or is in any way entitled to, and the cause or reason why a sale of the particular property is sought, and such pleadings must be sworn to.

The court waived the question of the effect of these provisions of the statute, saying that it was not filed within the provisions thereof, and that the bill must rest upon the inherent power of the chancery court to grant such relief, and by decree for conversion bind the parties who may hereafter come into existence. The court said:

"There is no doubt that, if there had been in being, and made a party by proper process to this cause, one of the first class of contingent remaindermen provided for in the trust deed, the decree would have bound all other members of the class who subsequently came into being. That result follows from the doctrine of representation, it being assumed that the living representatives would look after the interests of the entire class by bringing to the attention of the court the merits of the controversy, so far as they affected the class. But, in the absence of a member of such class, can the decree herein pronounced carry the whole title to the purchasers? This was the purpose in filing the bill, and if it fails in this respect the failure is absolute.

"It has been held by a large majority of the courts, both English and American, that in certain cases the life tenant will represent contingent remaindermen where no one of the latter is *in esse* at the time the court is called upon to intervene with regard to the estate in controversy."

In support of this power and jurisdiction of the chancery court there was cited:

*Finch* v. *Finch*, 2 Vesey, Sr., 492, in which Lord Hardwicke said:

It is admitted to be necessary to bring in the first person entitled to the remainder and inheritance of the estate, if such is in being. It is true, if there is no such person in whom the remainder of the inheritance is vested in being, then it is impossible to say the creditors are to remain unpaid, and trust be not executed until a son is born. If there is no first son in being; the court must take the facts as they stand. It would be a very good decree, and no son born afterward could dispute it unless he could show fraud, collusion, or misbehavior in the performance of the trust."

Also *Leonard* v. *Lord Sussex*, 2 Vernon, 527, in which a bill was brought by the tenant for life against the trustee in whom the title was vested for an account which was decreed, and it was held that the account should stand and be binding upon the sons.

Also *Gaskell* v. *Gaskell*, 6 Simon, 643. This was a bill brought by the father who was the tenant for life before a son was born. Objection was made that the life tenant had no issue in being. It was held that the court had frequently decreed partition under such circumstances, and that a decree for partition would be binding upon the tenant in tail when he came into being.

Also *Gifford* v. *Hart*, 1 Sch. & Lef., wherein it was declared to be sufficient to bring before the court the first tenant *in tail* in being, and, if there be no tenant *in tail* in being, the first person entitled to the inheritance, and, if no such person, then the tenant for life. Where all the parties are brought into court and the court acts on the

property according to the rights that appear without fraud, its decision must of necessity be final and conclusive.

It was also said that in all the cases determined by American courts, with the exception of North Carolina, the same rule had been set forth, citing, among others, the following:

*Kent* v. *Church,* 136 N. Y., 10, 32 N. E., 704, 18 L. R. A., 334, 32 Am. St. Rep., 693, in which it was said:

"Where an estate is vested in persons living subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto and affecting the jurisdiction of the court to deal with the same, represent the whole estate, and stand not only for themselves, but also for the persons unborn. This is a rule of convenience, and almost of necessity. The rights of persons unborn are sufficiently cared for, if, when the estate shall be sold under a regular and valid judgment, its proceeds take its place, and are secured in some way for such persons."

*Gavin* v. *Curtin,* 171 Ill., 640, 49 N. E., 523, 40 L. R. A., 777, was said to be directly in point. In that case the complainant, who was the tenant for life under the will of her father with remainder in fee to her children or to the issue of any of those children dying during the existence of the life estate before the birth of any child, filed a bill for the conversion of the real estate, stating strong equitable grounds therefor, making as defendants her brothers, who were contingent remaindermen of the second class. The court held the bill was maintainable, and that the decree of sale would bind any after-born children.

Another case referred to as holding the same doctrine is *Ruggles* v. *Tyson,* 104 Wis., 500, 79 N. W., 766, 81 N. W., 367, 48 L. R. A., 809. And *Sweet* v. *Parker,* 22 N. J. Eq., 454, *Baylor* v. *Dejarnette,* 13 Grat. (Va.), 152, *Faulkner* v. *Davis,* 18 Grat. (Va.), 651, 98 Am. Dec., 698, *McArthur* v. *Scott,* 113 U. S., 391, 5 Sup. Ct., 652, 28 L. Ed., 1015, Mitford on Eq. Pl. & Pr., Tyler on Parties, 24, Calvert on Parties 49-53, and Story's Eq. Pleading were referred to as having adopted the same view with singular unanimity. At section 145 of Story's Equity Pleading, Judge STORY says:

"Doubts were formerly entertained whether in suit in equity for a partition, brought only by or against a tenant for life of the estate, where the remainder is to persons not *in esse,* a decree could be made which would be binding upon the persons in remainder. That doubt, however, is now removed, and the decree is held binding upon them upon the ground of a virtual representation of them by the tenant for life in such cases."

With respect to this statement of Judge STORY limiting the rule to cases in partition, the court (106 Tenn., 618) said:

"But, as we have already seen, it was applied in *Leonard* v. *Lord Saxon,* supra, in the matter of account, and to the enforcement of a trust in favor of creditors by a decree for the sale of lands. *Finch* v. *Finch,* supra. No sound reason has been, or, so far as we can discover, can be, suggested why it should not apply in any other proceeding where a court of equity is exercising its jurisdictional power in disposing of real estate, the title to which is embarrassed by contingent remainders awaiting unborn remaindermen. If in the one class of cases necessity requires an applica-

tion of the doctrine of virtual representation, why should it not be as operative in the latter? We have held that, without the aid of the statute already referred to, a court of equity, in proper cases, has the inherent power to convert, for the benefit of minors, realty into personalty. *Hurt* v. *Long,* 90 Tenn., 445, 16 S. W., 968; *Thompson* v. *Mebane,* 4 Heisk., 370. In such a case could there be found any solid ground for distinguishing it, so far as this matter of representation is concerned, from a case of mere partition? We think not. If in the case of partition and of the conversion of the property of infants, falling within the inherent jurisdiction of courts of equity, then why not in every case, where the nature of the trusts and the situation of the property make it eminently judicious if not absolutely essential, in the interest of all persons *in esse* as well as *in posse,* that a conversion should take place?"

The court called attention to the necessity that in each case the interests of the contingent remaindermen in the proceeds of the converted property must be preserved by the decree directing conversion, and saying:

"This being done, we see no reason why the rule of virtual representation should not apply. Even if the limitation or qualification suggested in Calvert on Parties, p. 52—that is, 'that except under very particular circumstances no tenant for life should be capable of maintaining the suit, unless he were one to whose issue there was a remainder *in tail'*—is to prevail, the present case would fall within its spirit. For here the contingent remaindermen whom the tenant for life represents are not remaindermen *in tail,* yet they are children who may be born to him, and the children of such as may die during his life."

Jordan v. Jordan.

The rule in North Carolina, it was said, while entitled to great consideration, is overborne by the weight of authority.    The court said:

"There is nothing in our own cases to exclude us from the rule we have already indicated, and we think that its adoption is consistent with sound policy, and when applied under proper restrictions will work to the advantage of all interests involved."

It was furthermore said in this case that—"It is immaterial whether in such a case the bill is brought by or against the tenant for life." (106 Tenn., 620).

Some other cases bearing upon this question may be noticed.

*Lancaster* v. *Lancaster,* 13 Lea, 132, is cited for the proposition; it being there said that the power of a court of chancery in this state to validate a void or voidable sale, when for the interest of an infant, is well settled.   The above statement is a quotation from the opinion in the Lancaster Case, but no such question was there involved. The statement was used in an argumentative sense.   One phase of the case was a plea to set aside an antenuptial settlement made between the husband and wife, who were under age.

*Thompson* v. *Mebane,* 4 Heisk., 370, is also referred to. In that case a bill had been filed by the purchasers to set aside a sale made in the circuit court by the father of a minor and next friend *ex parte* on the ground that the circuit court had no jurisdiction to order the sale and divest and vest title.   The sale while was sought to be set aside had been under the provisions of the act of 1827 (Laws 1827, chapter 54), now constituting a part of our statutes relating to the partition of real estate.   The case

of *Norment* v. *Wilson,* 5 Humph., 311, was referred to as holding that this act did not contemplate partition by sale of reversionary interests, or interests in remainder, especially as to minors, and these acts can have no amplitude of construction from their nature.

In *Helm* v. *Franklin,* 5 Humph., 405, which case was also referred to, Judge GREEN, referring to the words "the property cannot be equally divided among those entitled thereto, or that it would be manifestly for their interest, that it should be sold," said that the meaning of the words "manifestly for their interest" is that, "if it is manifestly for the interest of the parties, in order to make partition that the estate be sold, it shall be so ordered."

It was said by this court in *Thompson* v. *Mebane,* supra, that—The words " 'heirs,' 'partition,' and 'cannot be equally divided,' in the first section of the act of 1827, the provisions in the second section as to the division of proceeds among the parties entitled thereto, and in the third section as to the funds belonging to minors, arising from the sales authorized, all show, conclusively, that the sale of land belonging to a single owner, and for the purpose of conversion merely, was not contemplated by the legislature, and that the cases intended to be provided for were cases in which the ownership was in more persons than one; . . . that the object was to authorize a sale, in lieu of partition, or where it was manifestly to the advantage of the owners."

This view was emphasized by Acts 1835, chapter 20, which confers exclusive jurisdiction upon the chancery court of all cases in equity "except petitions or bills for the partition or sale of real estate, by administrators, executors, guardians, heirs, or tenants in common." So it

was said these statutes did not authorize the sale of the minor's real estate in ex parte proceedings and at the instance of any one who might choose to assume the character of his next friend.

The court then took up the debated question of whether a court of chancery had jurisdiction to direct a sale of the infant's real estate, even for his maintenance or education, and, after referring to conflicting authorities, said:

"It was, probably, in view of this conflict in the authorities, that Judge TURLEY said in Brown's Case that the courts were prepared, though not without some difficulty, to assert such jurisdiction. 8 Humph., 207."

So the court said, in substance, in view of our State Constitution and the act of 1784 and that of 1835 clothing chancellors with the same powers in all respects which chancellors had by the existing law, and that were properly and rightfully incident to a court of equity and agreeable to the laws in force, and not inconsistent with the Constitution:

"We have no hesitation in declaring that a court of chancery had general jurisdiction, aside from Acts of 1827, and 1829, over the estates, as well as the persons of infants, and could, under appropriate circumstances, and for proper purposes, direct the sale of their real property." (4 Heisk., 377).

The court, however, declined to concur in the reasoning of Judge TURLEY in *Brown's Case,* 8 Humph., 207, and so it was held under the Acts of 1827-1829, so far as it related to the circuit court, was merely intended to authorize a sale for the purpose of partition and not to confer upon that court the power to sell the real estate of a minor merely for the purpose of converting it into person-

alty. This power belongs exclusively to a court of chancery.

From these authorities there would seem to be no doubt of the proposition that the chancery court has the inherent jurisdiction to bind by virtual representation the unborn contingent children *in posse* of Mrs. Jordan.

4. Whether the pleadings in this case are sufficient to warrant the chancellor's action is another question which we shall proceed at once to consider.

It is an elementary principle that nothing is properly before the court of chancery for its determination except what is submitted to it in the pleadings, and that an adjudication outside of the scope of the pleadings is void. 1 Daniel's Chancery Practice, 235; Story's Eq. Pl., 267; Gibson's Suits in Chancery, 139; *Wilson* v. *Schaefer*, 107 Tenn., 300, 64 S. W., 208; *E. Tenn. Coal Co.* v. *Daniel*, 100 Tenn., 65, 42 S. W., 1062.

Notwithstanding this principle, relief may be based on an answer:

"Where the answer denies the precise cause alleged in the bill and sets up a different cause, if complainant fail to prove the cause he alleged and he be entitled to any relief on the cause set up in the answer, the court will grant him such relief." Gibson's Suits in Chancery, section 558; *Tenn. Ice Co.* v. *Raine*, 107 Tenn., 151, 64 S. W., 29; *Dollman* v. *Collier*, 92 Tenn., 660, 22 S. W., 741.

In *Bang* v. *Windmill Co.*, 96 Tenn., 361, 34 S. W., 516, it was said:

"When a bill contains a prayer for general relief, but fails to make out a case for equitable interposition on behalf of the complainant, which is, however, clearly disclosed in the answer and proof, a court of equity will pro-

ceed to grant such relief as if the right thereto appeared
on the face of the bill; and the authorities are numerous
that relief to complainant may be predicated upon matters
appearing in the answer and proof, and not in the bill."
*Cox* v. *Waggoner,* 5 Sneed, 543; *Rose* v. *Nynatt,* 7 Yerg.,
31; *Neal* v. *Robinson,* 8 Humph., 435; *Mulloy* v. *Young,* 10
Humph., 298; *Bartee* v. *Tompkins,* 4 Sneed, 623.

By reference to the pleadings in this case we find that
in the petition filed by the purchasers they set up the filing
of the original bill, its principal averments and purposes,
and the proceedings had by the court thereunder, and there-
upon set up and allege the facts with respect to the real
title of the parties under the deed from J. H. Young to
Fannie M. Jordan. While it is true that the petition
prays in the first instance that their purchase of the land
be canceled, it also prays for relief which, as we have seen,
a court of equity can give; that is to say, if the sale is not
set aside, that the petitioners be vested with an indefeasible
title in fee to the land purchased by them, and that the
court make such further orders and decrees as may be
necessary to fully protect purchasers in their rights to
said property. Of course, the court ought not to ignore
the right of petitioners to have the sale canceled if under
the facts they are entitled to it, but we are now dealing
with the question of whether or not the pleadings are suffi-
cient to justify the relief subsequently prayed for—that
the petitioners be vested with an indefeasible title in fee
to the land, and that they be fully protected in their rights
to said property. The facts set forth in the petition may
not be sufficient of themselves to justify the court in grant-
ing this specific relief, but the answers of the defendants
thereto and the original pleadings do fully set forth facts

sufficient to justify the court in granting the relief which
was in fact granted by the chancellor; that is to say, the
petition and answer, taken together, make a case which,
if sustained by the proof, would fully warrant the court
in confirming the sale of this land for the protection of
the interests of the life tenant and the remaindermen. We
hold, therefore, that the pleadings are sufficient to enable
the court to vest in the purchasers a perfect title to the
property, and that this objection is not sufficient to entitle
purchasers to be relieved of their obligation to have car-
ried out and completed the sale to them.

5.   But it is contended on behalf of the purchasers that
they ought not to be bound by their purchase for the
reason that the decree of sale under which they purchased
the property was one for partition and carried with it an
implied warranty of title by the parties to the suit, whereas
the confirmatory decree does not carry with it such im-
plied warranty.

This right of implied warranty exists by virtue of sec-
tion 5917 of Shannon's Code, which reads as follows:

"And, in such cases, where the sale is made at the volun-
tary instance of parties, the decree or deed of the clerk
shall imply a covenant of *seizin,* and warranty of title by
the parties whose interest is sold, their heirs, representa-
tives, unless otherwise provided in the face of the decree."

This statute affords to the purchasers in this case no
other or greater right in the way of warranties by virtue
of a sale for partition than is afforded them in the sale
which the chancellor confirmed.

But it is said that there was a breach of the implied
covenant of warranty by reason of the failure of the pur-
chasers to obtain a title, and that this breach constitutes

ground for rescission because it is said that the warrantors are insolvent. This contention has no foundation in fact, snce there is neither averment nor proof of the insolvency of these parties.

6. The petitioners contend that, since the decree of confirmation passed by the chancellor at chambers was void, their purchase of the land at the sale constitutes merely an executory contract which entitles them to rescission thereof by the mere failure to obtain title at that sale.

There is a well-recognized difference between the right of a party to rescind an executory and executed contract for the purchaser of land. In the case of an executed contract the purchaser must rely upon the covenants of his deed, and cannot before eviction come into equity for rescission of his contract, except for fraud. Such purchaser has no remedy except on the covenants of his deed. Whereas a purchaser under an executory contract would not be required to complete his purchase and accept his conveyance unless title can be made according to his vendor's contract. But we can see no reason for any difference in the rights of a purchaser before confirmation of sale and after confirmation, so far as his right to rescind the contract is concerned, for in either case, in the absence of fraud or other reason rendering the decree of sale void, the parties will, if they can within a reasonable time, be allowed to perfect the title; and, if this cannot be done, the sale will be rescinded. In neither case is the purchaser compelled to resort to any remedy on the covenants. In either case the purchaser at any time before the sale is completed may intervene in the original case by petition for a rescission, or by original bill. In the present case all the parties are or may be brought before the court.

It will be proper to refer to some of our decisions on this point.

*Ex parte Kirkman,* 3 Head, 518. In that case a petition was filed on behalf of four minor children by their father, as next friend, John Kirkman, for the sale of a tract of land which had been devised to them. After proper reference the court decreed a sale at public vendue. Before the master made his sale, the father and next friend made a sale, which fact was brought to the attention of the court, and an order of reference was passed to the master to take proof and report whether it was to the interest of the infants to adopt and confirm this sale. The court adopted and confirmed it. Subsequently, upon the falling due of the first purchase-money note, the purchaser filed a petition to be released from the purchase on the ground that a good title had not been obtained. The principal ground was that the sale was made at a private sale by the next friend without any decree authorizing him to do so and pending a decree authorizing the master to make the sale by advertising. The court held that the sale thus made was invalid and not binding on the court or the purchasers, and that it would communicate no title, but that the court might adopt and confirm it with the assent of the purchasers if found beneficial to the infants upon a full and scrupulous investigation. The court said:

"It is not controverted that the court might have ordered the sale to be privately made, as well as publicly. If so, why not allow the court to accept and ratify a sale, or rather a bid, made through the next friend, without any anterior decree to sell in that way? It is in effect a sale made by the court, and not the next friend. He is only the medium through which the offer is made known to the

court.   There is no sale until confirmation, in any case. It is the sanction of the court that makes it a sale.   Until that is done, it is only an offer or bid.   The court will take care of the infants, without the kind aid and assistance of the purchasers, particularly when they have given a high price, and are tired of their bargain.   They get a good title in this case, and must stand to their purchase."

*Swan* v. *Newman,* 3 Head, 289.  Swan became the purchaser of real estate for which he executed his notes at a sale of lands made under a decree of the chancery court on a bill brought by the personal representatives of the deceased owner of the land.  The sale was confirmed.  After the purchaser had paid part of the purchase money he filed the bill in this cause to impeach the proceedings as being null and void.  The heirs resisted the bill and insisted that the sale be held good.   One ground of the attack on the sale was that the heirs were not all before the court, with respect to which the court said:

"This being so, it might be unnecessary to consider the objections taken to the regularity of the proceedings under which the sale was made, because, as between the purchaser and the infants, where we can see that the sale was advantageous to the latter, and that a loss would result from setting it aside, we would not do so, for irregularities or defects which can be cured by decreeing the title to the purchaser, as we have all the parties before us.  The purchaser can only claim the title, and that can be given to him notwithstanding there may be defects in the proceedings of such a character as that the infants would not be bound by them.  But if it is clear to the court, as it is in this case, where the property has since the sale depreciated in value, or on any other account, that it is to

the interest of the infants that the sale should be maintained, that will be done by a divestiture of their title in favor of the purchaser, and holding him to his contract. All he can demand is a good title, and if the court is able to give him that, he has no reason to complain that the proceedings were irregular; that is nothing to him. This, of course, can only be done where the parties interested are all before the court, and a case is made out to give the court jurisdiction. Otherwise the court could not decree him a good title, and for that reason would not compel him to pay his money. The case of *Rowan* v. *Pope,* decided at the last term at Nashville, and to be reported in the next volume of reports, was very similar to this in its principle.

"The court will afford to the infants the proper protection, by securing to them the benefits of an advantageous sale, and to the purchaser, by securing to him a good title. That is all he expected when he purchased, and that we are able to give him by decree investing him with the title of all the parties before us, both minors and adults."

*Elliott* v. *Blair,* 5 Cold., 185. In this case certain property had been sold by decree of the chancery court and a commissioner appointed to conduct the sale. Sale was made, when one Drane became the purchaser. There arose some disagreement between the commissioner and the purchaser as to the number of acres, as the result of which survey was made, but before the report of the survey the war intervened, and further action of the court was supended. After the war the report was made and the sale confirmed. The validity of this sale was attacked as being void upon the ground that Sarah Blair was a necessary party, and, being an infant, a decree to sell her lands was an ab-

solute nullity.  It was held that while, as a general prop-
osition, a court of chancery can make no binding decree
unless it has jurisdiction both of the subject-matter and
of the person of the defendant, that inasmuch as Sarah E.
Blair was not a necessary party, the sale would merely be
voidable, and was good subject to the right of Sarah Blair
to thereafter assert interest.

It was said that the doctrine in *Frazier* v. *Pankey,* 1
Swan, 75, and *Davidson* v. *Bowden,* 5 Sneed, 129, had no
application as it did not involve the jurisdiction of a
court of chancery to convert the real estate of infants un-
der our own statutory regulations or the inherent juris-
diction of the court, such as the cases related to.  So the
court said:

"The sale not being, as insisted, utterly void, it is cap-
able of confirmation.  And the next question is: Will the
court confirm it as to the minor, Sarah E. Blair, and com-
pel the devisees of the purchaser, Drane, to take the after-
acquired title of Haynes and wife?

"The established rule of law is that, if a party fraud-
ulently sell and convey land to which he has no title the
vendee who comes into a court of chancery to rescind the
contract will not be compelled to take an after-acquired
title. *Woods* v. *North & Johnson,* 6 Hum., 309; *Blakemore*
v. *Shelby,* 8 Hum., 430.  Here, we think, there is no fraud,
either in fact or in law.  The commissioner's sale was
public, and conducted under the orders of the court, and
confirmed without objection.  The fact that the title from
the Elliotts and Blair to Peacher was defective does not
appear to have been known to Peacher, when he conveyed
in trust to Kesee; nor does it appear that it was known to
any of the parties to the suit of *Short & Co.* v. *Peacher et*

*al.,* in which the decree of sale was made. How, then, could this fact be held as a fraud upon the purchaser? It is wholly different from the case of *Wood* v. *North & Johnson.* There the sale was by the executor, without anything in the will from which he could infer that he had any power to sell, and it was held the false representation of the executor in assuming to sell without authority under the will had the effect to deceive the bidder, and he was relieved of his purchase. No deception was practiced by any one in the conduct of the sale under consideration, and Haynes and wife's title is now tendered; and we think the purchaser, under the well-established principles of this court, is bound to accept it. *Blakemore* v. *Shelby,* 8 Hum., 439; *Frost* v. *Brunson,* 6 Yer., 36, and authorities cited.

"As to the remaining question, whether the court will adopt and ratify the sale as to the defendant Sarah E. Blair, and thereby complete the title in the purchaser's devisees, there is one prevailing rule running through all of our reports, and that is that the courts will not set aside, for irregularities merely, the sale of an infant's estate where it is advantageous to the infant. In the case of *Kirkman et al., Ex parte,* 3 Head, 519, this court went further, and upon the same principles adopted a private sale made by a next friend without any decree authorizing him to sell. The proof in this case is overwhelming that it is greatly to the interest of the minor that the sale should be adopted for her benefit; and her testamentary guardian is before the court insisting on it; and, in view of all the facts, we are unable to see any valid reason why it should not be done.

Jordan v. Jordan.

"It works no injury to the purchaser, for thereby he gets a good title to the same land he supposed he was buying when he bid it off, and at the same price at which he agreed to accept it. The fact that the land has since depreciated in value, and the interest accumulated on his debt, are his misfortunes and not the fault of the minor."

*Bryant* v. *McCollum*, 4 Heisk., 511. In this case it was held that a purchaser who has bought after the death of a party to a decree, with knowledge of his death, and who did not ask to be released from his bid at the first term, will not be relieved because of such death, and because for want of confirmation he has been delayed in obtaining possession for eight months after the sale. The decree was not one to sell lands for the satisfaction of a mortgage. The sale was made to one Leach. It seems that the man to whom the mortgage deed was executed died after the decree of sale was ordered and before the day of sale, and subsequently the heirs of the deceased were brought into court. Before the sale could be confirmed the purchaser filed a petition to be relieved of his purchase, alleging that the land had descended to the heirs, and that title was in them at the time of the sale, and, as the sale was not confirmed at the August term, he would lose the rents for that year, and that he had not been in possession since the sale; that trespasses and waste had been committed. Upon this petition being filed the court referred it to the master for proof and report was made. Confirmation of the sale was resisted.

It was contended by the purchaser that, the owner of the land having died after the sale was ordered and before actually made, the title descended to the heirs, and therefore a confirmation sale would not vest in him the

title. The court said, among other things:

"In proper cases the court may set aside the sale before or after confirmation for fraud, accident, or mistake, or want of title. But whether the purchaser can be required to take the title, where the sale ordered before the death of the owner, and made afterwards, has not been determined."

The court then proceeded to hold that, although the title had not been divested in terms by the decree, yet such was its legal effect, and it ‌did not and could not descend to the heirs, but that it was held in abeyance to be transmitted to the purchaser at the sale created by the decree.

"But," said the court, "if the interlocutory decree did not have the effect to divest the dry legal title out of Roach we hold that, as his heirs were made parties before the decree of confirmation, it was proper for the chancellor to pronounce that decree, and not to release the purchaser. Neither McCollum nor the heirs of Roach made any objection to it; and all proper parties were rightfully before the court when the decree was pronounced. It is well-established that, if a vendee files a bill against the vendor for the rescission of a contract for the sale of land, the purchaser cannot be discharged from his purchase merely upon the ground that his vendor cannot make a good title, and the vendor, if he has acted fairly, will be allowed a reasonable time within which to make the title. 1 Meigs' D. 213, 214; *Blakemore* v. *Shelby,* 8 Hum., 441. By a parity of reasoning, if the sale directed by the court occurred under such circumstances as that a good title could not be made, yet if the heirs and personal representatives, as in this case, were brought before the court within a reasonable time, the purchaser should be compelled to take

the title.  It may fairly be inferred that all parties in interest but the purchaser were willing to the confirmation, and that it is to the interest of such of them as are minors that the decree shall stand.  See *Swann* v. *Newman,* 3 Head, 290, 291; *Kirkman, Ex parte,* Id., 519."

In the case of *Topp* v. *White,* 12 Heisk., 165, it is said to be well settled that the purchaser of land under a deed with covenants in the absence of fraud and before eviction cannot have a rescission, but must rely upon his covenants, but that this principle has no application where no deed has been executed.  It will be noticed that in all these cases the vendor was unable to make title according to his contract.  In still other cases the question of fraud entered into the ground of rescission.

In the case of *Nichol* v. *Nichol,* 4 Baxt., 145, a bill was filed to compel specific performance of a written contract for the sale and purchase of land.  This action was resisted, and the contract sought to be rescinded upon the ground that the vendor could not make good title to the property. While it was held in that case to be unquestionably the rule of law that so long as a contract remains executory the purchaser is not bound to proceed to execute it, if it appears, by reason of defects not previously disclosed to him, the vendee cannot make the title free from doubt, the court said:

"It is next mentioned that, even if the complainants were not in a condition to make an indisputable title, still, as all the parties claiming or having any interest or rights in the property are now before the court, and are willing and desirous that the sale to the defendant be confirmed, and be required to take the property at the price

agreed to be given by him, that an undoubted title can now be made by the decree of the court.

"It is true that, in a case where there was no fraud or concealment, if the vendor be able to make a clear title upon final hearing, the purchaser will be required to accept it; this, principally, in cases where the vendee has gone into possession and retained it. *Kennedy* v. *Woodfolk,* 3 Hay., 195. See, also, *Buchanan* v. *Alwell,* 8 Hum., 516.

"But the complainants are not now able to make the defendant a title free from doubt. It is true that, if the case of the county of Davidson be sustained, and the deed of gift declared void, a sale made under a decree in the cause would, so far as appears, communicate a good title. But this would be a contract entirely different from the one made by the parties. The defendant was not bound to purchase the property at this sale."

*Baker* v. *Shy,* 9 Heisk., 85. This was a bill seeking rescission of a contract to purchase land. The vendor was given a title bond, and it was alleged that the vendor could not make a perfect title, because the title was in one Delobelle, from whom the vendor had purchased, while Delobelle was an alien and could not make a deed of conveyance. The deed was made by the son of Delobelle, who was living in the county and who was attorney in fact for his father. Rescission was resisted by the defendant upon the ground that the son did have authority from his father to sell, and that the complainant had gone into possession after the purchase and was still in possession, and that there was no fraud or misrepresentation about the title, and further that the defendants would in a reasonable length of time be able to produce a perfect title; that

they believed that they had a perfect title when they made the sale, and upon these facts they asked the court to grant a reasonable time within which to obtain a title. This time was granted, and on the trial the new deed was produced duly executed and authenticated. It was said by the court:

"It is the policy of the law to hold parties to their contracts, when fairly and deliberately made without fraud. The complaint in the case is the inability of the vendors to make a perfect title, and the bill discloses no extraordinary circumstances of hardship that would demand the interference of the court upon other grounds. The court of equity may entertain such a case, but it is matter of discretion, and it may very well leave the parties to their remedies at law. *Humbard* v. *Humbard,* 3 Head, 101; *et vide Maney* v. *Porter,* 3 Hum., 363; *Gwinther* v. *Gerding,* 3 Head, 197; *Trigg* v. *Read,* 5 Hum., 529. This disposes of the question made on the ruling of the court in refusing to dismiss the bill, on the ground that the complainants had their remedies at law.

"In this case the defendants asked a reasonable time to perfect their title, which the court very properly allowed. 6 Yer., 36; 7 Ves., 205; Hay (Coop. Ed.), 138. And the complainant would have properly been compelled to have accepted the after-acquired title in the absence of fraud, if the title be a good one. 6 Hum., 309; 8 Hum., 439; 4 Johns. Ch. R., 84; 6 Yer., 36; 7 Ves., 205."

The court held the alien had the right to execute the deed, and that the title was perfected thereby. The court reversed the action of the chancellor in rescinding the contract.

*Blackmore* v. *Shelby,* 8 Humph., 440. A portion of the heirs of Brunson filed a petition praying for the sale of a tract of land for the purpose of dividing the proceeds. The land was ordered to be sold and was sold to Clark M. Shelby, who was the guardian of some of the heirs. Shelby sold the land to Blackmore, giving him a bond for title, and Blackmore executed his notes for the purchase money. The sale was not, however, confirmed by the court. Shelby recovered a judgment against Blackmore on one of the notes, and thereupon Blackmore filed his bill in chancery praying for a rescission of the contract on the ground that Shelby had no title to the land. During the pendency of the suit the heirs of Brunson obtained a decree for the sale of the land, and Shelby became the purchaser at the sale. The sale was confirmed, and the title of the Brunson heirs was vested in Shelby. It was held that Shelby acquired title at the sale in chancery, and thereupon held:

"We are also of opinion that there was no fraud on the part of the defendant in the sale to the complainant. The complainant purchased, as he shows in the bill, with knowledge that the land had belonged to the heirs of Brunson. This case does not, therefore, fall within the principle of the case of *Woods* v. *North & Johnson,* 6 Hum., 309, relied on by the complainant's counsel. In that case it is held that, if a party fraudulently sell and convey land to which he has no title, the vendee who comes into court of chancery to rescind the contract will not be compelled to take an after-acquired title from the vendor. This is unquestionably a correct principle, but it has no application to this case. Here, we think, there was no fraud on the part of the vendor, and the case is governed

by the well-established principle that, although the vendor may have been unable to make a good title at the time of the contract of sale, yet, if he is in a condition to make such title at any time before final decree, the vendee will be compelled to accept it."

The cases referred to are sufficient to show the correctness of our holding to the effect that a purchaser before confirmation will not be relieved of his purchase by reason of defects in the title where these defects can be cured and perfect title vested in the purchaser without unreasonable delay.

The reason of the ruling is that the purchaser can be vested with what he purchased, and the contract between the parties can be enforced. It is immaterial if conditions subsequently arise making it undesirable for the purchaser to comply with his contract.

Of course, if the decree of sale be void for fraud or any other reason, an entirely different situation is presented. In all cases where fraud enters or the sale is absolutely void there is no contract to be enforced against the purchaser, and he is entitled to be relieved of any obligation to do so. This makes it necessary to inquire into the contention made that the representation in the original bill filed herein that the property was owned by Mrs. Jordan for life and by her children who are named as parties to the bill in remainder, whereas in fact the remainder interest was contingent, constitutes such a fraud as would vitiate the contract and relieve the purchasers from their obligation.

It is undoubtedly true that the decree of sale was pronounced by the chancellor upon the fact being, as alleged in the original bill, that the entire estate in fee was owned

by Mrs. Jordan for life and by her children, who were named as parties to the bill, in remainder, and it is likewise true under the deed itself that the children of Mrs. Jordan who were parties to the suit did not own a vested remainder, but only a contingent remainder. There was, therefore, a misrepresentation of the exact condition of the title, but this misrepresentation was not an intentional one. Mrs. Jordan did own a life estate. The effect of the deed to her and her children was simply misinterpreted by her counsel. While the effect of this misrepresentation was to prevent a perfect title from being acquired by the purchasers, it was not a fraudulent misrepresentation in the sense that it would vitiate the contract and entitle the purchaser to have it rescinded on that account, but a situation was presented where both the purchaser and the seller could insist upon compliance with the contract—the purchaser held to comply upon being vested with title for which he had contracted.

A more serious situation arises upon the contention that the decree of sale itself was void because the court was without power to make a partition sale of this property at the instance of the life tenant and contingent remaindermen. If the order of sale was absolutely void, the purchaser could not, of course, be compelled to make their purchase by means of the confirmation of the void sale.

At the outset it must be borne in mind that a court cannot validly adjudicate upon subject-matter that does not fall within its province as defined and limited by law. Even though a court may have jurisdiction of the subject-matter generally, in the sense that the word "jurisdiction" is frequently used, nevertheless, if the court makes a de-

cree which is not within the powers granted it by the laws of its organization, its decree is void.

The chancery court has general jurisdiction of the sale of lands for partition, but this jurisdiction may only be exercised in certain cases set forth in the law, and if it undertakes to exercise the jurisdiction in instances not authorized its decree is absolutely a nullity. *Chickamauga Trust Co.* v. *Lonas,* 139 Tenn., 228, 201 S. W., 777, L. R. A., 1918D, 451. In that case Lonas had conveyed a tract of land to secure the payment of a note due to the trust company. The trust company filed a bill to foreclose the deed of trust. Its foreclosure was resisted by the minor children of Lonas. Before obtaining the loan and in view of some question as to the title of Lonas' property between him and his wife, they filed a bill against their children for the sale of the land for partition, it being alleged that Lonas and wife were life tenants, and the children remaindermen. It was sought by the bill to show that a partition of this land would be to the advantage of the minors. This proceeding resulted in partition in kind by which certain portions of the estate were set apart to Lonas and wife absolutely. This partition decree was held by the court to be absolutely void. The court said:

"It is not within the power of any court in this State, whether of law or equity, to enforce a partition as between the owners of a life estate and the owners in remainder. Our statutes do not contemplate power in a court to entertain a bill of a life tenant of the whole premises against those entitled in remainder, to have the life estate valued, that valuation to be made a basis for such partition. It had been so decided by this court before the partition pro-

ceeding was launched by Lonas and wife, in the cases of *Holt* v. *Hamlin*, 120 Tenn., 496, 111 S. W., 241, and *McConnell* v. *Bell*, 121 Tenn., 198, 114 S. W., 203, 130 Am. St. Rep., 770."

It was held by this court in *Holt* v. *Hamlin*, 120 Tenn., 496, 111 S. W. 241, that our partition statutes do not contemplate the sale of lands for partition at the instance of the life tenant. In that case the court said:

"When we compare these sections with the preceding ones which we have quoted, it is observed that, while an estate for life in the whole of the premises does not and cannot enter into the scheme of partition at all, yet it may enter into the scheme of a sale for division, but only in a qualified way. This can only be with consent of the life tenant, when that person is one *sui juris*. When the life tenant is a person under disability, the court will determine under all the circumstances, and taking into view the interests of all the parties, whether such estate ought to be excepted from the sale or should be sold."

"But the statute does not contemplate a bill filed by the life tenant of the whole premises against those in reversion or remainder for the purpose of effecting a sale, in order that he may have his life estate valued and paid to him in money. The sale of a life estate covering the whole premises is a mere incident to the right of persons in remainder or reversion to have their interests sold for division, and will not be granted against the life tenant unless he consent, if capable of consenting, and if he is not capable of giving consent the court will not consent for him, unless it can see that such sale would be to his interest. Any other rule would result in taking the prop-

Jordan v. Jordan.

erty of one private person and subjecting it to the use of
another, and be a violation of the Constitution."

The foregoing, taken in connection with what was said
in *Chickamauga Trust Co.* v. *Lonas, supra,* will demon-
strate that a partition of land cannot be had where the
life estate is in one person in the whole of the property,
and any effort of the court to do so is void for want of
power and authority. But this is not a bill to have land
partitioned in kind. Its object is to have land sold and
the proceeds distributed among the owners upon the theory
that it is manifestly to the interest and advantage of all
concerned that this should be done. This is not a bill for
the life tenant only to have her life estate valued and sep-
arated from that of the remaindermen, but it is a bill of
the remaindermen who hold undivided interests in the
property, and in which the life tenant joins for the pur-
pose of giving her consent to a sale for distribution. Un-
doubtedly the court has power and authority to sell land
for partition at the instance of the remaindermen who
have undivided interests therein, if the life tenant con-
sent thereto. As was said by the court in *Holt* v. *Hamlin,*
120 Tenn., p. 517, 111 S. W., 246:

"This does not mean that a life tenant, by consenting to
a sale of the property through a bill brought by him for
that purpose, can force a sale. We do not doubt that any
one of the owners in remainder or reversion could bring
a bill for sale of property against his cotenants in rever-
sion or remainder and the life tenant, and with the assent
of the latter, if a person *sui juris,* have the land sold, if
for the benefit of all; nor do we doubt that, where the
life tenant is a person under disability, that person could
be made a defendant in the supposed bill, and the court

145 Tenn.—29

would order the land sold, if for the benefit of all, even though the life tenant should be incapable of giving assent, because of disability, or because not known."

The doctrine announced in *Holt* v. *Hamlin* that the life tenant, as such, has no right to maintain a bill against remaindermen to have property sold for division of proceeds, and that such bill cannot be maintained, was subsequently adopted and approved by the court in *McConnell* v. *Bell*, 121 Tenn., 206, 114 S. W., 203, 130 Am. St. Rep., 770.

There is no doubt, we think, of the right of cotenants in remainder to have a sale of the land for distribution of the proceeds when it is to the advantage of all parties that it should be done, nor the power of the court with respect thereto in case the life tenant consent to such a sale. Undoubtedly the court could and would entertain a bill filed by the cotenants in remainder against the life tenant to have a sale of the land for partition and proceed to said sale if the life tenant could come in and signify his or her consent thereto. There is no reason perceived why the life tenant may not join with some of the cotenants in remainder and in the bill give her assent thereto against other cotenants, and thereby afford both jurisdiction and discretion to the court to make the sale, and, even if the life tenant be under disability, the court can inquire into whether or not she ought to give her consent to the sale, as much so when she is a complainant as when she is a defendant. We conclude, therefore, that the sale in this case is not void because Mrs. Jordan owns a life estate in the whole property or by reason of the fact that she has joined in the original bill. The court having reached the conclusion that it was a proper case and to the mani-

fest advantage of the life tenant and the other parties that the sale should be made, the decree cannot be attacked as being void nor complained of as not affording good title to the property sold.

But it is insisted that this sale is void because the children of Mrs. Jordan who joined in the bill for the sale of the land had no vested estate in remainder, but only a contingent remainder interest in the property, and by reason thereof the court would be powerless at their instance to have a sale of the property for distribution of the proceeds.

It is settled by our decisions that there can be no partition or sale for partition among contingent remaindermen. In *Rutherford* v. *Rutherford,* 116 Tenn., 383, 92 S. W., 1112, 115 Am. St. Rep., 799, a bill for partition or division of the proceeds was brought by two life tenants who had undivided interests in the life estate against contingent remaindermen, and it was contended that by reason thereof the interests were such that they could not be made the subject of a sale for partition. The court said on this point:

"Of course, there could be no partition or sale for partition among the remaindermen, because their rights are purely contingent. The children of Mrs. Rutherford have no vested interest in the property. It is impossible to say at this date who will be the ultimate owners of the remainder. This cannot be determined until the death of both Mrs. Rutherford and Mrs. O'Conner. If Mrs. O'Conner should die without children leaving her sister Mrs. Rutherford surviving her, we think under a true construction of the will Mrs. O'Connor's half interest would go to Mrs. Rutherford. If Mrs. Rutherford should die with-

out children her interest would go to Mrs. O'Conner. If either should die leaving children, the interest of that one would go to her children. If one should die without children after the death of the other, who had died leaving children, the share of the one so dying without children would go to the surviving children of the other. Of course, it would be impossible to partition or make sale for partition among interests so uncertain as to the person who shall ultimately take. *Land Co. v. Hill et al.,* 87 Tenn., 589,.610, 611, 11 S. W., 797."

But it was held in the Rutherford Case that the mere fact that some of the interested parties held their interests as contingent remaindermen would not prevent the life tenants, who were entitled to have their interests separated from each other, from having the whole property sold and the proceeds distributed. The statute made specific provision for cases of that sort. The statute does not, however, make any provision for the sale of lands and distribution of proceeds among contingent remaindermen, and if the children of Mrs. Jordan, parties to this suit, hold their interests as contingent remaindermen, the decree would be invalid and pass no title to the purchasers, and they would be entitled to be relieved of their purchase. This necessarily follows because Mrs. Jordan was the owner of the entire life estate, and she herself could not enforce a sale for partition. She could only consent when the application was made on behalf of those who did have the power, and, as contingent remaindermen have no right to a sale for partition, none could be enforced, if indeed her children are contingent remaindermen.

Since we have held that the complainants who joined with Mrs. Jordan, the life tenant, to bring about this sale

for partition, did not have any vested interest in the property, but only a contingent interest, it necessarily follows from what we have said that they could not invoke the jurisdiction of the chancery court to have the sale made. The court was without any power or authority to make such a sale, and the decree was void, and, being void, the purchasers were not bound thereby, and they could not be compelled to become the purchasers at a sale such as the chancellor undertook to confirm in this cause.

But it is insisted on behalf of Mrs. Jordan and her children that this is a collateral attack upon the decree of sale, and that the decree of sale is not void upon its face, and therefore, it cannot be held in this proceeding to be void. This contention is based upon the fact that the bill did not disclose the fact that the remaindermen were only contingent, and that the decree was based upon the averments of the bill which showed that they had a vested interest in the property. This contention is the same as if the complainants should say:

"We made a misrepresentation in the bill as to the state of our title, and thereby obtained a decree of sale which would be void if we had made a truthful representation, and we invoke our misrepresentation in order to prevent the parties who purchased from saying that the sale is void."

The whole theory of the right to compel the purchasers to accept this deed is based upon the power of the court to modify the original decree to conform to the title or interests of the children as they appear under this deed. Certainly it cannot be contended by them that their pleading which they say confers this power is a collateral attack on the original decree. This question is not raised

collaterally in the sense that these purchasers are bound by the false representations of the original bill, but the power and jurisdiction of the court is directly attacked. It will be remembered that before this sale was confirmed— that is to say, at the first term of the court following the sale itself (excluding from consideration the void confirmatory decree) the purchasers filed a petition in the original cause challenging the truth of the averment in the original bill with respect to the title.

The original bill alleges that the children of Mrs. Jordan, who were parties either as complainant or defendant, are the owners of a remainder interest in the land. This averment was contradicted by the deed to which the bill referred, but it does not appear here whether the deed itself was at first misinterpreted by the court, or whether it was not actually called to the attention of the court, but when the deed to which the bill refers was brought to the attention of the court it developed that the court had been without any power or authority to decree the sale at all.

"If an action or proceeding is brought for the very purpose of impeaching or overturning a judgment, it is a direct attack upon it, such as a motion or other proceeding to vacate, annul, cancel or set aside a judgment, or any proceeding to review it in an appellate court, whether by appeal, error, or *certiorari*, or a bill of review, or under some circumstances, an action to quiet title. On the other hand, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important, or even necessary to its success, then the attack upon the judgment is collateral." 23 Cyc., 1062.

In 15 R. C. L., 839, section 312, the author says:

"A direct attack on a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of the same in a proceeding instituted for that purpose.  In general any statutory method for the purpose of avoiding or correcting a judgment is a direct attack, and it is usually held that a motion to open or vacate a judgment is a direct attack thereon, though it has been contended by some writers that such a motion, unless made during the term or within some time specified in a statute authorizing it, should be supported only by the record, and therefore should be regarded as a collateral rather than a direct attack.  A proceeding by *audita querela* to set a judgment aside constitutes a direct attack, as do proceedings by writ of error, appeal, or *certiorari*.  Other methods of direct attack are by filing of motion in the court in which the judgment has been entered to amend, or arrest such judgment.  An attack by *habeas corpus* on the validity of the judgment under which the petitioner is imprisoned has also been held to be a direct attack, though there are decisions to the effect that *habeas corpus* is a collateral remedy, and subject to the limitations common to collateral proceedings, since the writ involves an examination of evidence dehors the record.  It has been held that one who purchases, of the owner, property which has been sold upon an execution issued under a void judgment has a right, in an action to quiet title, to attack the judgment on the ground of lack of jurisdiction in the court rendering it, and such attack is a direct and not a collateral one."

"A direct attack upon a judgment is by appropriate proceedings between the parties to it, seeking for sufficient

cause alleged, to have it annulled, reversed, vacated, or declared void." 7 Ency Dig. Tenn. Rep. p. 647.

There can be no question of the power of a court of equity to set aside and enjoin the enforcement of a judgment which is absolutely and entirely void, and especially is this true where the judgment is regular on its face and does not disclose grounds of its invalidity. A proceeding in equity for that purpose is a direct attack. Otherwise there would be no remedy against the void judgment. Where a court of chancery has no jurisdiction, its judgment and decree are void. The facts necessary to determine the question of jurisdiction may be inquired into, and a judgment declared void and enjoined by a bill filed in chancery court, and such a bill is not a collateral, but a direct, attack on it. *Nashville* v. *Fisher,* 1 Shan. Cas., 345.

It has been held time and again that the remedy of a purchaser of land at a sale ordered by the chancery court against a void decree of sale upon an inequitable ground is by petition in the cause in the court where the sale was ordered. Certainly, if the attack is one made before the conveyance is executed or before final disposition of the cause, this is his remedy. *Read* v. *Fite,* 8 Hump., 330; *Blackmore* v. *Barker,* 2 Swan, 342.

There is some conflict in the authorities as to the right of the purchasers to come for relief by petition in the original cause after confirmation of the sale. But before confirmation the undoubtedly proper mode to have the sale set aside is by filing petition in the cause for that purpose. This mode of procedure is but a substitute for an original bill attacking a decree as being void for fraud or upon other grounds. *Spence* v. *Armour,* 9 Heisk., 167; *Majors*

v. *McNeilly*, 7 Heisk., 294; *Bryant* v. *McCollum*, 4 Heisk., 513. This ruling is not opposed by the decision in *Greenlaw* v. *Greenlaw*, 16 Lea, 435. In that case there was a question raised as to the action of the chancellor in ordering certain lands to be sold, but before the chancellor ordered the lands to be sold, the purchaser objected to the confirmation on account of certain irregularities which he alleged in the proceeding leading up to the sale. It was held by the court that the purchaser could not complain of these irregularities, since the court had jurisdiction to pronounce decree. The court would not review upon the application of the purchaser the question of the merits of the chancellor's decree. The court held that the objections of the purchaser after sale had been completed, by motion or petition, stand upon the same footing as if he had proceeded by original bill, his particular remedy being governed by the time when application for relief was made, and that in either event, if he gets a good title, the validity of the title being alone an issue, that is all he can ask. Therefore it was said that the attitude in which the case went to the supreme court was equivalent to a collateral, and not direct, attack upon the proceeding. This language was used in the sense that, although the decree might be erroneous, the purchaser could not complain, and, since he had not complained by direct attack upon the jurisdiction of the court in the court below, his effort to do so by the appeal was treated as being a collateral attack.

In the case at bar the application of the purchasers directly attacks the sale upon the ground that the court was without jurisdiction. This they might do in the absence of the deed which the bill purported to exhibit with it. The deed was a part of the bill, and the deed itself

shows the lack of power and jurisdiction of the court, and, whether the attack be treated as direct or collateral, the proceeding was void. In the proceeding itself, while the cause was pending upon the bid of the purchasers, and before the bid was accepted, and before the sale was confirmed, the deed referred to in the bill was brought to the attention of the court, and the power of the court to sell the land challenged.

It results, therefore, that the purchasers were not bound by this decree of sale, and the chancellor and the court of civil appeals, in undertaking to confirm the sale and compel the purchasers to accept the land and carry out the terms of the purchase, committed error. The cause must therefore be remanded to the chancery court to the end that proper proceedings may be had to place the parties *in statuo quo*. The costs incident to the appeal and all the proceedings arising under the petition of the purchasers will be adjudged against the complainants in the original bill.

MCKINNEY, J., dissents.