MARY BOND CLIFTON SANFORD, Plaintiff-in-Error,

*v.*

THE LOUISVILLE AND NASHVILLE RAILROAD,
Defendant-in-Error.

469 S.W.2d 363

(*Jackson,* April Term, 1971.)

Opinion filed July 6, 1971.

ALFRED B. PITTMAN, CLAY N. SAUNDERS, Memphis, for plaintiff in error.

JOHN B. MACK, KENT B. MONYPENY, JR., Memphis, for defendant in error.

Mr. Justice Humphreys delivered the opinion of the Court.

Plaintiff, Mary Bond Clifton Sanford, has appealed from a judgment of the Circuit Court sustaining defendant Louisville and Nashville Railroad's demurrer to her amended declaration, and dismissing her suit.

By her amended declaration Mrs. Sanford alleged that she is the sole remainderman with respect to certain lands devised by will by Edward Fitzgibbon in 1899; that defendant instituted a condemnation proceeding in 1899 with respect to a portion of these lands and that her rights to compensation were not protected in that proceeding. That the value of the land condemned was paid into the hands of the Clerk of the Circuit Court of Shelby County in 1899 by defendant, but no funds now remain to compensate her for her interest in said payment into court, and that she is entitled to damages in the amount of $100,000.00.

Defendant's amended demurrer is grounded upon T.C.A. sec. 23-1406,[1] and the doctrine of virtual repre-

---

[1] "23-1406. *Parties Defendant.*—All parties having any interest in any way in such land or rights may be made defendants, and the proceedings shall only cover and affect the interest of those who are actually made parties, unborn remaindermen being, however, bound by proceedings to which all living persons in interest are parties."

sentation whereby unborn remaindermen are bound by proceedings by which all living persons in interest are parties. The amended demurrer points out that the declaration and stipulation of the parties show that the plaintiff was *in posse* in 1899; that all persons then living with an interest in the property sought to be condemned were made parties to the 1899 condemnation proceeding; that the court was advised as to the possible interests of remote contingent remaindermen; that the fair value of the condemned land was paid into court by defendant pursuant to a court order; that the court did protect the interest of plaintiff therein; that control of these funds was taken over by chancery court under an order dated 1902 which specifically protected the rights of remote contingent remaindermen; that twenty-seven years after the condemnation proceeding of 1899 the chancery court, in 1925, without participation or fault on defendant's part, ordered these funds then on hand to be paid over without security to Thomas W. Clifton, plaintiff's grandfather.

At the hearing on the amended demurrer plaintiff contended that defendant failed to comply with the statutory provisions relating to condemnation, providing that the owner shall be named, and if unknown, notice of the fact given by publication. Also, that the failure of defendant to comply with these statutory requirements could not be cured by the doctrine of virtual representation, where the rights of the party represented were ignored. That in sustaining the demurrer the court denied plaintiff her just compensation guaranteed by the Tennessee and United States Constitution.

The amended declaration shows that in the year 1899, Edward Fitzgibbon devised by will certain lands in

Shelby County, Tennessee. The devise affecting land involved in this suit was considered ambiguous, and was finally construed by this Court in 1901, whereby the rights of the various devisees were determined and settled. The devise was in this language:

"I hereby will and bequeath the 70 acres more or less lying west of the homeplace, and the 70 acres aforementioned, to Thomas Clifton and his children for their lives, with the remainder to their heirs after the death of my wife and son, James Fitzgibbon."

With respect to this devise, this Court held as follows:

"(4) Thomas W. Clifton and his children under the said will, take a vested remainder for life, with the remainder to their heirs in fee, which will ripen into an estate in possession immediately on the death of James Fitzgibbon, whether he dies leaving issue surviving or dies leaving no issue surviving, in and to these 70 acres, west of the two 70 acre tracts mentioned in the next two preceding paragraphs, being the westernmost 70 acres of the 210 acre tract mentioned and described in Paragraph I of this decree."

Meanwhile, in the year 1899, defendant brought suit to condemn portions of this land for railroad purposes. The Court was advised by defendant that the interests of the respective parties named as defendants were not clear, and a copy of the Fitzgibbon will was introduced and made a part of the records of the proceeding. Among others, Thomas W. Clifton, his wife, and his only two children, who were minors, were named as defendants. Thomas W. Clifton was appointed as guardian ad litem for his two minor children. An answer opposing the condemnation proceeding was filed in the cause by

Thomas W. Clifton, his wife and children. So far as the family of Thomas W. Clifton is concerned, all persons then in being with an interest in the land were named as party defendants and were before the court. Plaintiff, the sole heir of Thomas W. Clifton, his wife and children, was not in being in the year 1899.

In the suit, $2,752.00 was awarded for the land condemned, and an order was entered stating that defendant had paid this amount to the circuit court clerk for the use and benefit of the defendants in the condemnation action.

The clear inference is that the allegation in the condemnation petition with respect to the uncertain state of the title, together with the copy of the will, advised the circuit court of the necessity of retaining jurisdiction over the award, because it was not paid out to the named defendants, but retained in court; with the exception of $168.00, loaned to John Fitzgibbon, a defendant with an interest in the land, on his secured note.

In 1902, Thomas W. Clifton instituted proceedings in the Chancery Court of Shelby County to determine the interests of the respective parties in the funds held by the circuit court clerk. Defendant-appellee herein was named as a defendant in this suit. On August 8, 1908, an order was entered by the Chancellor that $661.80 and $459.00, respectively, of the $2,752.00 paid to the circuit court clerk, belonged to the "defendant James Fitzgibbon for life, and to the plaintiffs Thomas W. Clifton and his children, Lorene Mai Clifton and Thomas Edward Clifton, in remainder for their lives, with remainder to their heirs in fee". The chancellor further ordered "the fund so paid into the circuit court by the Louisville and Nashville Railroad Company in the condemnation pro-

ceeding is to be treated as real estate and stand as disposed of by the will of Edward Fitzgibbon and that under the facts as they exist in this case, no partition of said funds can be had, as between the life tenant and remaindermen.'' The funds were ordered loaned out to James Fitzgibbon upon proper surety.

In July 1925, after the death of James Fitzgibbon, and after repayment to the clerk and master of chancery court of the funds loaned to him in 1902, a subsequent chancellor ordered the clerk and master to pay this money, amounting to $1,120.80, to Thomas W. Clifton and his children. The order for payment did not require security.

■ Plaintiff's first assignment of error, that defendant did not comply with sec. 23-1405 T.C.A.,[2] providing that in condemnation suits the owner shall be named, and if unknown, notice of the fact given by publication, is not good. Because it is based on an interpretation of the statute that ''unknown owners'' are the same as unborn remaindermen, and this is not the case.

Sec. 23-1404 T.C.A. says that the petition for condemnation shall state the name of the owner, or, if unknown, state the fact. It also says that if the owner is unknown, notice shall be given by publication.

These statutes do not justify interpreting ''unknown owner'' as including unborn remaindermen. An ''un-

---

[2] "23-1405. *Notice of petition.*—Notice of this petition shall be given to the owner of the land or rights, or, if a non-resident of the county, to his agent, at least five (5) days before its presentation. If the owner is a nonresident of the state or unknown, notice shall be given by publication, as provided in this Code in similar cases in chancery."

known owner", of necessity, must be *in esse*, a condition obviously opposite to that of an unborn remainderman.

Sec. 23-1406 T.C.A. removes any doubt about this matter by providing that "unborn remaindermen" are bound by proceedings to which all living persons in interest are parties. This provision removes any possibility that unborn remaindermen are "unknown owners" under the statute.

Plaintiff argues that by reason of sec. 23-2202 T.C.A. publication is the recognized procedure for bringing unborn contingent remaindermen before the court. While it is true that sec. 23-2202 T.C.A. does provide for bringing unborn remaindermen before the court by publication, this statute was initially enacted as Acts of 1919, Chapter 13, section 2, long after the condemnation proceeding in this case, which was in 1899, and applies, in terms, to suits to quiet, perfect and adjudge titles. (I have not found in a rather cursory search that service of process on unborn heirs by publication is even mentioned in the 1916 Edition of Gibbon's Suit in Chancery.)

■ Plaintiff's second point for reversal, that the interests of the unborn contingent remaindermen were not recognized and protected in the condemnation proceeding that the doctrine of virtual representation does not apply, is not good. Defendant apprised the court of the problem with the title in its petition and by filing a copy of the will, and the court recognized the problem and acted to protect the unborn remaindermen by holding the fund. The fund was not only protected by the circuit court's holding it, in addition, it was further protected by a chancery court decree in a proceeding to which the defendant-appellee was a party, providing that these

funds were to be treated as real estate and no partition could be had as between the life tenants and the remaindermen.

On these facts we hold that plaintiff's interest in the property was recognized and that proper steps were taken to protect it.

The fact that twenty-seven years later the chancery court, in 1925, authorized payment of plaintiff's interest to her grandfather, her aunt and her father, without security, can in no way militate against the overall effect of that which had previously been done by the circuit and chancery court to recognize and protect plaintiff's contingent remainder interest.

Likewise, the fact that the protection afforded the fund did not result from a petition exactly defining plaintiff's contingent interest and praying for process by publication for unborn heirs, nor from an allegation in the petition expressly invoking the doctrine of virtual representation, is immaterial. Process was served as required by the condemnation statutes, the will and the petition did notify the court of the state of the title, all the living parties in interest were before the Court, and the Court acted exactly as it would have acted had everything now complained of been done. This complies with the condemnation statute, and is enough.

The case of *Jordan v. Jordan,* 145 Tenn. 378, 239 S.W. 423, taken with the condemnation law, supports this particular conclusion, and is authority, generally, for the proposition that plaintiff, as a contingent remainderman, was before the Court by virtual representation, about which we shall say more, presently.

■ Although plaintiff's third proposition, that by sustaining the demurrer the trial court has denied her the just compensation guaranteed by the Tennessee and United States Constitution, has not been separately supported by citation of law or argument, we take it that she is relying on the proposition that she has not had her day in court, not having been made a party. We disagree. We have already shown that defendant complied with the condemnation statutes by making all owners of any interest in the property parties defendant, and by filing with the court the muniment of title, the will, showing who the owners were, and the interests of unborn remaindermen. So that plaintiff, by the terms of the condemnation act, was before the Court.

We point out further, that, independent of the condemnation statute, plaintiff was before the court by operation of the doctrine of virtual representation under the opinion of this Court in *Bransford Realty Co. v. Andrews*, 128 Tenn. 725, 164 S.W. 1175 and *Jordan v. Jordan*, supra. In *Bransford*, the realty company sought specific performance of a written contract whereby Andrews had agreed to buy a lot. Among other defenses, Andrews objected that he could not get title because certain parties in being and unborn heirs had not been parties to the case in which the land had been sold to Bransford Realty Company. Responding to this, Justice Green, later Chief Justice, writing for the Court, said:

"As heretofore stated, she, the life tenant, was a party, her two children were parties, and the trustee was a party to this suit. We think that a valid decree of sale was made, with these parties before the court.

"The doctrine of virtual representation is thoroughly established in Tennessee. It is well settled that con-

tingent limitations and executory devises to persons not in being, or uncertain and indeterminable at the time of the proceedings, may be bound by a decree against the person then claiming the vested estate. In suits to enforce a trust, or with reference to trust property, so limited in remainder, if the holder of the legal title, the life tenant, and the persons in being in whom the remainder would become a vested estate if the life estate then fell in—if all these are parties, a valid decree may be pronounced.'' 128 Tenn. 735, 164 S.W. 1178.

Among the cases cited as authority for this statement in Bransford Realty Company is *Miller v. Texas & Pacific R. Co. et al.,* 132 U.S. 662, 10 S.Ct. 206, 33 L.Ed. 487, from which we quote:

''We think that the supreme court of Texas was right in holding that all the necessary parties were before the court. * * * The entire estate was represented before the court,—a particular estate in the widow, and the fee-simple remainder in the infant son. The interests of the appellants, Thomas H. Miller and others, as devisees under the will, was a mere contingent interest, a mere executory devise. In such a case, it is sufficient to bind the estate, in judicial proceedings, to have before the court those in whom the present estate of inheritance is vested.''

In *Jordan v. Jordan,* supra, the question whether a contingent remainderman would be bound by virtual representation when no member of the contingent class was *in esse,* was thoroughly examined and it was again held that unborn contingent remaindermen were before

the Court by virtual representation when the life tenant is a party.

In summary, we affirm the judgment of the trial court: (1) because plaintiff was before the Court under the eminent domain law; (2) because plaintiff was before the Court by operation of the doctrine of virtual representation. We so hold, because the muniment of title showing ownership was before the Court and all living owners were before the Court; (3) because plaintiff's rights were taken into account and protected by the action of the circuit court; (4) because plaintiff's interests in the condemnation award were protected by a decree of the chancery court; and (5) because with no apparent notice to any of the parties to the chancery suit in which this decree had been made, and without fault on defendant railroad's part, but acting exclusively under the jurisdiction retained over the case in the last decree made therein, a chancellor ordered the funds paid out to plaintiff's grandfather, Thomas W. Clifton, her Father, Thomas E. Clifton, and her aunt, Lorene Mae Clifton.

All assignments are overruled and the costs are taxed against plaintiff-appellant and her surety.

DYER, CHIEF JUSTICE, and CHATTIN, CRESON and McCANLESS, JUSTICES, concur.